**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ARTURO MORENO, JR., individually and on behalf of others similarly situated, Plaintiffs,** | ) | |
| **v.** | ) | **No. 05-142C (Judge Firestone)** |
| **THE UNITED STATES, Defendant.** | ) | |

**PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF INFORMATION**

Plaintiffs in this case are 758 current and former employees who attended entry-level training at the Defendant's Federal Law Enforcement Training Center in Glynco, Georgia. The Defendant required them to train for 6 days per week but paid them for only 5 days.

Pursuant to Rule 37 of the Rules of the Court of Federal Claims ("RCFC"), the Plaintiffs move the Court to compel production of certain information requested more than 8 months ago pursuant to RCRC 34. The information was subsequently identified at depositions of the Defendant and its employee. The Plaintiffs further move the Court to compel production of certain information to which the Defendant has waived any attorney-client privilege. The information sought goes to heart of the issues in this case.

**FACTS**

On January 1, 2002, the Defendant's Federal Law Enforcement Training Center in Glynco, Georgia ("FLETC") began requiring trainees to train on a 8-hour-a-day, 6-day-a- week schedule. Despite the 6-day schedule, Immigration and Naturalization Service ("INS") and the Department of Homeland Security ("DHS") trainees were paid for only five days of training.

Early in 2002, the Defendant took the position that trainees at the FLETC were not

entitled overtime pay for a 6th day of training. The basis for the position was that the federal regulations did not provide for overtime payment for a sixth day of training. The Defendant relied on 5 C.F.R. §§410.402, interpreting the Federal Employee Pay Act. *See Ex. A, Bohlinger April 24, 2002 Memo to Robert F. Diegelman, Acting Asst. AG for Administration*.[1] With respect to its FLSA obligations, the Defendant relied on 5 C.F.R. §551.423. Specifically, it relied on§551.423(a)(3) which provides that the FLSA does not require overtime pay for time spent in entry level training outside "regular working hours." The Defendant interpreted the term "regular working hours" to mean 40 hours a week. *See Ex. B, 30(b)(6) Deposition of Defendant by Wayne A. Coleman ("Coleman Depo."), at 86-97.*

By November 2002 the Office of Personnel Management ("OPM"), the entity charged with promulgating regulations governing the Defendant's FLSA overtime obligations, had concluded that the FLSA required the Defendant to pay overtime for the 6th day of training at the FLETC. OPM explained that the term "regular working hours" was clearly defined in the regulations to include regularly scheduled overtime hours. *See Ex. C, Baker e-mail to Draper E-mail of 11/18/02; Ex. D, Draper e-mail to Wilson of 12/18/02*; 29 C.F.R. §§551.421(a), 610.111(a)(2). OPM further concluded that because the 6th day of training at the FLETC was regularly scheduled, *i.e.*, schedule in advance of the work week, the regulatory definition made clear that paying overtime for the 6th day of training at FLETC was "not optional." *See Ex. D, Draper e-mail to Wilson of 12/18/02; see also, Ex. E, Cohen e-mail to Melissa Allen of 3/19/03.*

Despite the clear legal obligation to pay overtime for the 6th day of training at the FLETC, the Defendant did not. Instead, it waited until the last week in August 2003 to begin paying

---

[1]Exhibits are offered through the Affidavit of Michael J.D. Sweeney, Counsel for Plaintiffs ("*Sweeney Affidavit*"), filed with this motion.

overtime. *See Ex. F, John Ehrbar e-mail 9/3/03*. Moreover, despite acknowledging the obligation to pay overtime wages retroactively to the people it had not paid, the Defendant did not begin those payments until December 2004, and did not complete them until June 2005. When the Defendant finally paid the back overtime wages, it did not pay Plaintiffs the liquidated damages mandated under 29 U.S.C. §216(b). Instead, it takes the position that it does not owe liquidated damages because it acted good faith and had reasonable grounds for not paying for the 6th day of training. *See Defendant's Answer* ¶ *31, Docket #7.*

**1. Procedural History**

This case was filed in this Court on January 21, 2005. On April 3, 2006, the Court severed the case into two separate actions, *Moreno* and *Porta*, and ordered the Defendant to send notice of a collective action to all class members in this case. On April 14, 2006, the Court ordered that discovery be bifurcated into the issues of liability and damages. The Court stayed discovery on damages and allowed discovery on liability to go forward. The Defendant sent notice to the class on May 19, 2006, and the period for joining the action closed on July 18, 2006. A total of 758 Plaintiffs have joined the action.

**2. Discovery**

Plaintiffs propounded document requests and interrogatories on the Defendant on May 15, 2006. After several requests for extension, the Defendant responded to the discovery requests on August 4, 2006. Following the production, the Parties had extensive discussions on the extent of the discovery and the Defendant's obligations. At the Defendant's insistence, the Plaintiffs sent a 24-page letter detailing what they perceive as deficiencies in the Defendant's discovery production and limiting the requests based on the Defendant's objections. *See Ex. G, Sweeney Letter of 9/18/06.* The Defendant has not responded to that letter. Instead, it began producing

additional documents and deponents. The Plaintiffs have taken three depositions in this case: two of the Defendant and one of a fact witness, Vicki Draper, Lead Compensation Specialist with OPM. Discovery closed on January 15, 2007. *See Court Order of November 28, 2006, Docket #81*.

The Defendant's response to the discovery requests has been sporadic, late and incomplete. For instance, it produced the bulk of its document production, pages bates stamped MOR 224 through 523, for delivery to plaintiffs' counsel on January 15, 2007, the day discovery closed and a federal holiday. *See Ex. H, Pease Letter of 1/12/07.* The production was substantially after the Plaintiffs had conducted depositions. A second example is that on January 10, 2007, five days before the close of discovery and 41 days after Ms. Draper's testimony, the Defendant produced additional documents. Among them was an e-mail showing that Ms. Draper had testified falsely at her deposition on November 30, 2006. *Compare Ex. I, Deposition of Vicki Draper, 11/ 30/06 ("Draper Depo"), at 129:8-130:9* (testifying that December 17, 2002 was the first time she offered advice that the sixth day of training was compensable as FLSA overtime) *with Ex. C, Draper e-mail of 11/18/02* (draft response to HUD that overtime is owed for a sixth day of training). A third example is that literally in the middle of the deposition of the OPM representative on January 11, 2007, the Defendant produced an e-mail between Ms. Draper and her supervisor showing that since 1976, OPM had considered "regular working hours to include regularly scheduled overtime hours" that were compensable as overtime under the FLSA. *See Ex. J, e-mail from Baker to Draper of 8/11/03*. The e-mail is directly contrary to Draper's testimony that "it had been OPM's long-standing interpretation that any hours outside the 40-hour work week for entry level training was not part of their regular work schedule. It was outside the regular work hours." *Ex. I, Draper Depo., at 103:4-10*. There are many other such examples.

3. **Information Identified at Depositions but not Produced**

Deponents identified relevant information that the Plaintiffs requested in their original discovery requests but has not been produced. Both during and after the depositions, the Plaintiffs requested the information be produced, but the Defendant refused. Wayne Coleman testified as the Defendant's representative pursuant to RCFC 30(b)(6) on November 2 and 3, 2006; Vicki Draper testified as a fact witness on November 30, 2006; Jerome Mikowicz testified as the Defendant's representative pursuant to RCFC 30(b)(6) on issues regarding OPM on January 11, 2007.The following information was identified at the depositions and remains outstanding:

***30(b)(6) Deposition of Defendant by Wayne A. Coleman ("Coleman Depo."), Ex. B***

a. E-mails between members of the INS compensation policy staff regarding the issue of paying overtime for the 6th day of training at the FLETC. *See Ex B, Coleman Depo., at 109- 10;*

b. A memo to the Executive Associate Director for Administration regarding payment of overtime for the 6th day of training at the FLETC. *See Ex. B, Coleman Depo., at 119- 20;*

c. E-mail alerts from OPM regarding compensation policy. *See Ex. B, Coleman Depo., at 133-34*;

d. Documents resulting from a search of the deponent's e-mail account based on his testimony that he received and sent e-mails regarding payment of overtime for the 6th day of training at the FLETC. *See Ex. B, Coleman Depo., at 150-152*;

e. The reimbursement agreement between Immigration and Customs Enforcement ("ICE") and the USDA National Finance Center providing for payment for the 6th day of training. *See Ex. B, Coleman Depo., at 259-64*;

f. E-mails between ICE's compensation staff and employees regarding the payment of back overtime pay for the 6th day of training at the FLETC. *See Ex. B, Coleman Depo., at 310-313*;

g. The forms of notice that went to class members when the Defendant paid them the back overtime wages. *See Ex. B, Coleman Depo., at 321-24*;

h. The training module for INS supervisors that covers overtime and premium pay. *See Ex. B, Coleman Depo., at 330-35*;

i. Earlier drafts of the Smalls Declaration. *See Ex. B, Coleman Depo., at 336-37*.[2]

___***30(b)(6) Deposition of Defendant by Jerome Mikowicz ("Mikowicz Depo."), Ex. K***

j. OPM staff notes on the application of the FLSA to regularly scheduled overtime hours. *See Ex. K, Mikowicz Depo., at 218-223*.

___***Deposition of Vicki Draper ("Draper Depo"), Ex. I***

k. Reference materials in OPM's subject matter files regarding 5 C.F.R. §§ 551.423, 551.421, and 610.111. *See Ex. I, Draper Depo.,* at 26-29, 36-38, 121-22.

The Plaintiffs requested production of the information above on the deposition transcript and again after each deposition in writing. We asked that the Defendant state if searches for the information had been made and the information had been identified and all responsive material produced or listed in a privileged log, or, if the searches had not been made, that the Defendant state that the searches will be made. Moreover, the Plaintiffs asked that if the Defendant has a specific objection to conducting a search or producing specific information, it make that objection so that the Parties can bring any disputes to the Court and get the matter resolved quickly. *See Ex. G, Sweeney Letters of 12/15/06 & 11/22/06; Ex. L, Sweeney e-mail of 1/12/07*. The Defendant responded that it would not respond to the requests without additional formal discovery requests. *See Ex. M, Pease letters of 12/21/06 and 1/12/07*. The Plaintiffs responded that no additional requests are necessary because the documents were covered under existing discovery requests. We further indicated that we were not inclined to propound additional requests given that the Defendant has not yet responded properly to the initial requests. *See Ex.*

[2]The Plaintiffs requested the production of a variety of other information identified at the depositions, which has since been produced.

*G, Sweeney Letters of 12/15/06; Ex. N Sweeney e-mail of 1/9/07*. The Defendant suggested that the Plaintiffs move the Court for the information. *See Ex. O, Pease letter of 1/16/07*.

**4. Privileged Documents**

The basis of the Defendant's defense to paying liquidated damages in this case is that it relied in good faith on a reasonable interpretation of the law in refusing to pay the Plaintiffs overtime. *Answer ¶ 31*. In support of its claim, it has produced a myriad of documents that reflect communications with counsel on the issue. For instance, it produced the following:

a. Ex P, a January 17, 2002 e-mail from Joanne W. Simms, Deputy Assistant Attorney General, Human Resources and Administration, to Paul Krumsiek of the Justice Management Division, entitled "Overtime at Glynco" and discussing the basis for not paying overtime for the 6th day of training at Glynco;

b. Ex A an April 24, 2002 memo from George H. Bohlinger, III, Executive Associate Commissioner Office of Management at the INS to Robert F. Diegelman, Acting Assistant Attorney General for Administration, asking for assistance in seeking authority to pay employees for the 6th day of training at FLETC.

c. Ex. Q, a July 2, 2002 memo entitled "Overtime Compensation for the Sixth Day of Training" from Robert F. Diegelman, Acting Assistant Attorney General for Administration, to George H. Bohlinger, III, Executive Associate Commissioner Office of Management at the INS explaining why the Defendant overtime is not owed under the Federal Employee Pay Act;

d. Ex. R, a June 24, 2003 e-mail from Donald Winstead, Deputy Associate Director for Pay and Leave Administration at OPM, copying James Green and Mark Robbins, OPM counsel, describing the Defendant's legal position with respect to paying overtime for the 6th day of training at FLETC.

e. Ex. S, a July 8, 2003 e-mail from Jo Ann Perrini, Manager of OPM's Pay and Administration Group, to Melanie Watson and James Green, counsel to OPM, regarding the obligation to pay overtime for the 6th day of training at the FLETC;

f. Ex T, a July 14, 2003 fax from Peter Gregory, Chief of DHS' Commercial Law Division, to Fred Tingley, a Pay Specialist with DHS, regarding the legal obligation to pay overtime for the 6th day of training at the FLETC;

g. Ex U, an October 21, 2003 memo from Joanne W. Simms, Deputy Assistant Attorney General, Human Resources and Administration, to Keith E. Hall, Assistant Director, Human Resource Management Division, entitled "Overtime Compensation During Training"

> discussing OPM's March 2003 "decision which stated FLSA covered employees are entitled to receive overtime for time spent in entry level training on the sixth day of a training course."

These are only some examples of the communications with counsel regarding the Defendant's obligation to pay overtime for the 6th day of training that were produced in discovery.

Despite producing some communications with counsel concerning paying overtime for the 6th day of training, the Defendant has not produced all such documents. It has provided two privilege logs that assert the attorney-client privilege for many communications regarding the issue. *See, Ex. V, Defendant's List of Privileged or Protect Documents Withheld from Production, January 11, 2007, Source Justice Management Division* (including 9/26/03 e-mail re "FLSA for basic training"; two 5/24/02 e-mails re "Overtime Pay for Sixth Day of Training"; four 11/5-7/03 e-mails re "Question"; five e-mails 7/28/03 and 8/12/03 re "Overtime pay issues"; 7/2/02 Memo re "Overtime Compensation fo the Sixth Day of Training"; 11/5/03 e-mail re "Question"; five 9/26/03 e-mails re "FLSA for basic training"); *Ex. W, Defendant's List of Privileged or Protect Documents Withheld from Production, January 11, 2007; Source CBP, DHS, OPM* (including entries 2 and 6-13).

## ARGUMENT

Rule 26(b) of the Rules of the Court of Federal Claims (RCFC) provides: "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Rule 34 "obligates defendant to produce documents 'in the possession or control of the party upon whom the request is served.'" *Lumbermens Mut. Cas. v. U.S.*, 70 Fed.Cl. 94, 96 (Fed.Cl.,2006). "The 'inclusive description' of the term document in Rule 34

'accord[s] with changing technology.'" *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316-17 (S.D.N.Y. 2003) *citing* Advisory Committee Note to Fed. R. Civ. P. 34. Thus, "[e]lectronic documents are no less subject to disclosure than paper records." *Id*. at 317.

The Plaintiffs properly requested the information sought here through document requests pursuant to RCFC 34. Plaintiffs' counsel attempted in good faith to resolve any disputes, both over the phone and, at the Defendant's insistence, in a 24-page letter. The Defendant did not respond. Instead, it began a sporadic, untimely and incomplete production of information. The information sought was covered under the Plaintiffs discovery requests and the Defendant has raised no legitimate reason for not producing it.

**1. Information Identified at the Depositions Should Be Produced**

The Defendant must produce the information identified at the depositions because it is relevant to the Plaintiffs' claims. RCFC 34. At issue in the case is whether the Defendant acted in good faith on a reasonable interpretation of the law in violating the FLSA and should therefore be relieved of the statutory obligation to pay liquidated damages. The information sought goes directly to the Defendant's knowledge regarding its FLSA obligations during the period of its illegal pay policy. The Defendant's knowledge during this period is relevant to whether it acted in good faith. Moreover, the Defendant has indicate that it will raise a statute of limitations defense. The information sought is relevant to both the issue of how long a statute of limitations should apply (FLSA requires a showing of willful activity for a 3-year statute, 29 U.S.C §255(a)) and to issues of equitable tolling and estoppel.

The Plaintiffs requested the information sought here in their original document requests. *See, Ex. G, Sweeney letters of 12/15/06; Ex. X Plaintiffs' First Request for Production of Documents to Defendant, requests 1, 4, 8, 9, 10, 13, 14, 15, 18, 19, 20, 21,22, 23, 24, 25, 26, 28, 29, 30, 31.*

Based on the Defendant's complaints, the Plaintiffs sent a 24-page letter detailing the relevance of the material and narrowing the requests to try to meet the Defendant's issues. *See Ex. Y, Sweeney Letter of 1/18/06.* The Defendant chose not to respond. Instead, it began producing documents.

The information requested here is not privileged information. The Defendant has not raised a privilege with respect to the documents identified at the depositions. Given the deponents' descriptions, it is highly unlikely that a privilege would protect of the information. Moreover, the Defendant has waived the attorney-client privilege with respect to such information. *See section 2 below*.

Plaintiffs counsel has tried to resolve this issue with the defense counsel without success. *Ex. O, Pease letter of 1/16/06.*

**2. The Defendant Has Waived the Attorney Client Privilege**

The attorney-client privileged cannot be used as both a sword and a shield. "[A party] cannot be allowed, after disclosing as much [privileged communications] as he pleases, to withhold the remainder." *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981) (quoting 8 Wigmore, Evidence, § 2327, at 636 (McNaughton rev. ed. 1961); *see also*, *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982) ("[S]ince the purpose of the attorney-client privilege is to protect the confidentiality of attorney-client communications in order to foster candor within the attorney-client relationship, voluntary breach of confidence or selective disclosure for tactical purposes waives the privilege. Disclosure is inconsistent with confidentiality, and courts need not permit hide-and-seek manipulation of confidences in order to foster candor."). Where a defendant raises a good faith defense in the FLSA context and selectively discloses privileged information supporting that defense, it has waived the attorney-

client privilege. *See, e.g.*, *Nguyen v. Excel Corp.*, 197 F.3d 200 207-208 (5th Cir. 1999) ("[Defendant] waived the attorney-client privilege by selectively disclosing confidential communications."); *McLaughlin v. Lunde Truck Sales, Inc.*, 714 F.Supp. 916 (N.D. Ill. 1989) (employer waived the attorney-client privilege by asserting counsel advice as a basis of FLSA good faith defense).

In this case, the Defendant raised a good faith defense and has produced many communications with counsel regarding its legal obligation to pay overtime for the 6th day of training at the FLETC. Rather than turn over all the communications, however, the Defendant has selectively chosen to produce some, and claim privilege with respect to others. For example, it produced a communication from Robert F. Diegelman, Acting Assistant Attorney General for Administration, to George H. Bohlinger, III, Executive Associate Commissioner Office of Management at the INS discussing a legal basis under the Federal Employee Pay Act for not paying overtime for the 6th day of training at the FLETC. *Ex. A*. Similarly, it produced a communication from Joanne W. Simms, Deputy Assistant Attorney General, Human Resources and Administration discussing the basis for not paying overtime for the 6th day of training at Glynco. *Ex. P*. At the same time, it has withheld other attorney communications regarding its obligation to pay overtime, especially attorney communications during the period after OPM made clear that such payments were required. The law does not allow the attorney-client privilege to be wielded in such a manner. *Nguyen*, 197 F.3d at 207-208; *McLaughlin*, 714 F.Supp. 916.

The Plaintiffs request that the Court order that the Defendant has waived the attorney-client privilege with respect to communications regarding its obligation to pay overtime for the 6th day of training at the FLETC, and require it to produce all such information. The Plaintiffs also ask

that the Court give the Defendant two weeks to produce the communications, and after that time, prohibit the Defendant from introducing further information in support of its good faith defense. Such an order allows the Defendant to produce all the counsel it received in support of its illegal payment policy, not just the attorney-client communications it wants to produce. The order would also allow the case to proceed without further delay.

Plaintiffs' counsel raised this issue with defense counsel to no avail. *See Ex. Z, Sweeney & Pease e-mail exchange of 8/14/06*. The Plaintiffs have tried to consult via telephone with defense counsel on this and other issues, but defense counsel has stated that it would rather the Plaintiffs move the Court to compel production. *See Ex. O, Pease letter of 1/16/06.*

**CONCLUSION**

The Plaintiffs respectfully request that the Court order: (1) that the Defendant must produce the information listed above that was identified at depositions; (2) that the Defendant has waived the attorney-client privilege with respect to communications regarding payment of overtime for a 6th day of training and must produce such material within two weeks; and (3) that after two weeks, the Defendant may not produce additional discovery in support of its good faith defense.

Dated: January 26, 2007

Respectfully submitted,

/s

Michael J. D. Sweeney, Esq.
Getman Law Office
9 Paradies Lane
New Paltz, NY 12561
Tel: (845) 255-9370
Fax: (845) 255-8649