IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARTURO MORENO, JR., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05-142C |
| v. | ) | |
| | ) | (Judge Firestone) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL THE PRODUCTION OF INFORMATION

Pursuant to Rule 20(b) and the Court's orders on January 31, 2007, and February 9, 2007, defendant responds to plaintiffs' motion to compel.[1] Plaintiffs request production of certain information that it believes to exist upon the basis of the depositions of Wayne A. Coleman on November 2, 2006; Vicki Draper on November 30, 2006; and Jerome Mikowicz on January 11, 2007. Plaintiffs' motion should be denied because plaintiffs did not serve formal written requests prior to the close of discovery for the information it moves to compel and untimely filed their motion to compel almost two weeks after the close of discovery. As explained in plaintiffs' motion to compel, plaintiffs' counsel made oral requests at depositions for information plaintiffs believed to exist, to which defendant's counsel made clear that formal written discovery requests must be propounded. Over two

[1] As an initial matter, defendant notes that plaintiffs erroneously state that 758 plaintiffs have joined this action, but a count of consents to sue filed in this action yields 689 plaintiffs.

weeks later, plaintiffs' counsel wrote a letter attaching portions of the deposition transcript, "reiterating" in writing his prior oral requests. On December 21, 2006, defendant responded that:

> because you have repeatedly stated as one of your goals limiting our defense in these cases to our responses to your overbroad, vague, burdensome, or otherwise objectionable initial discovery requests, we are reluctant to undertake additional searches without obtaining formal discovery requests that comply with the rules of the Court. Your informal requests that we produce documents, information, or entire categories of documents that you or a deponent may have alluded to in a deposition, or that we search certain locations according to your questions in a deposition, are not discovery requests to which we are able properly to respond. As a result, we reiterate our requirement that you propound formal discovery requests to which we will respond in accordance with the rules of the Court.

Pl. Ex. M.

Although plaintiffs' motion to compel is both untimely and improper given their failure to serve formal discovery requests prior to the close of discovery, we will also address the substance of some of plaintiffs' requests as they have been presented for the first time in their motion to compel. However, if the Court orders defendant to produce information beyond what is provided in the discussion below, defendant respectfully requests 30 days from the later of the date of the Court's order, or plaintiffs' service of unobjectionable versions of the

requests set forth in their motion to compel, to serve any additional production response.

We object to plaintiffs' individual requests to compel production as generally vague, overbroad, and unduly burdensome because they almost universally contain undefined terms and fail to specify a time period or provide other information describing documents "with reasonable particularity" that might enable us to conduct a reasonable inquiry to locate responsive documents. In addition, many of plaintiffs' requests are redundant, request information that could have been obtained through further questioning at the depositions, or are unlikely to yield any relevant or admissible information.

Specifically, as to plaintiffs' second request, defendant produced prior to the close of discovery at least two copies of the document plaintiffs apparently seek, which are bates numbered MOR-247 and MOR-314. See, e.g., Pl. Ex. Q. With regard to plaintiffs' third request, on January 11, 2007, defendant produced a list of the subjects of electronic mail messages sent to the relevant Office of Personnel Management ("OPM") electronic mail subscription list (payleave@listserv.opm.gov) from January 1, 2002, to May 30, 2004 (the time period specified in plaintiffs' deposition notice), which are bates numbered MOR-210 to MOR-212; and on January 24, 2007, in a supplemental discovery production subsequent to the Court order protecting from

disclosure certain confidential information, defendant produced an analogous list covering the period of February 3, 2001, to April 29, 2002, which are bates numbered MOR-2124 to MOR-2125; none of which subjects in either list mentions or suggests any discussion of payment for a 6th day of entry-level training at the FLETC. See Defendant's Ex. A.

As to requests for communications or "forms of notice" between the Government and plaintiffs, as requested in request numbers 3(f) and 3(g), plaintiffs' counsel has access to that information through individual plaintiffs, or could describe collective details (such as the senders or time periods of communications) that individual plaintiffs recall in order to permit defendant to conduct a reasonable inquiry. Without such information, we would have to search hundreds of electronic mail accounts and physical locations corresponding to each of the 689 plaintiffs. Further, on January 24, 2007, three business days after a protective order was issued by the Court to permit disclosure of information protected by the Privacy Act, defendant produced approximately 1,500 pages of electronic mail messages regarding payment for a sixth day of entry-level training at the FLETC that likely include some plaintiffs as senders or recipients.

Regarding plaintiffs' ninth request, plaintiffs misconstrue Mr. Coleman's deposition statement as referring to a prior draft

of Ms. Smalls' declaration rather than Mr. Coleman's declaration. Given Ms. Smalls' apparent reliance upon a prior draft of Mr. Coleman's declaration, on November 21, 2006, defendant produced the cited September 24, 2004, draft of Mr. Coleman's declaration and attachments, which is bates numbered MOR-152 to MOR-171. Finally, it is unclear what possible relevance a reimbursement agreement between two Government agencies could have to the issue of liability in this case, and, therefore, we should not be required to produce any such document.

B. Defendant Has Not Waived The Attorney-Client Privilege By Producing Non-Privlieged Documents, Or Otherwise

Plaintiffs contend that defendant has waived the ability to assert the attorney-client communications privilege. However, the documents plaintiffs cite as evidence of waiver do not include attorney-client communications. Defendant has diligently reviewed its document productions to avoid disclosing attorney-client communications because, among other reasons, to routinely disclose such information would have a chilling effect upon Federal employees seeking legal advice when necessary in the performance of their duties. Defendant also has never asserted advice of counsel as a defense, which defendant's counsel explained clearly to plaintiffs' counsel in August 2006:

> [W]e do not rely in Porta or Moreno upon "advice of counsel" for our defense of good faith. Rather, the Government's good faith defense involves the actions of Government

> officials based upon the regulations or interpretations of the agencies entrusted with interpreting statutes or regulations. What any legal counsel advised or did not advise is not material, what is material are the actions and positions taken by the Government officials making decisions. That is very different than asserting an "advice of counsel" defense. We have maintained, and have not waived, our attorney-client privilege while asserting a good faith defense.

Pl. Ex. Z.

In 2000, the United States Court of Appeals for the Federal Circuit summarized the general law of this circuit regarding the attorney-client privilege. See In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 805 (Fed. Cir. 2000). The privilege protects communications between attorneys and clients for the purpose of seeking or dispensing legal advice. Id. The Federal Circuit held in Spalding Sports that "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." Id. Although the Federal Circuit has not ruled upon the applicable standard to determine waiver of attorney-client privilege by inadvertent disclosure, it has stated that issues of attorney-client privilege should be decided upon a case-by-case basis, id., which would be consistent with the majority rule, the five-part Hydraflow test. See Hydraflow, Inc. v. Enidine Inc., 145 F.R.D. 626, 637 (W.D.N.Y. 1993); Gray v. Bicknell, 86 F.3d 1472, 1483 (8th Cir. 1996) (); see also Alldread v. City of Grenada,

988 F.2d 1425, 1433 (5th Cir. 1993) (adopting a case-by-case approach); 3 Weinstein's Federal Evidence § 503.42[4] (2d ed. 2000). The Hydraflow test considers: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error. Hydraflow, 145 F.R.D. at 637.

Plaintiffs cite seven documents as support for the proposition that we have selectively revealed attorney-client communications for an affirmative purpose in this litigation. Based upon these documents, plaintiffs (without explanation) appear to consider any legal discussion between Government employees to be protected attorney-client communication. Plaintiffs appear to assume, without support, that documents containing legal principles or justification must "reflect advice of counsel," and that such "reflect[ion]" would implicate the attorney-client privilege. However, as the Government's witnesses made clear to plaintiffs' counsel in depositions, Government employees who are not lawyers often are familiar on a day-to-day basis with legal principles and requirements related to their field and are quite capable of engaging in policy-related legal discourse. When such legal discourse between non-

attorneys does not explicitly reveal or relay protected attorney-client communications, there is no basis upon which to claim attorney-client privilege.

The first three documents and the last document plaintiffs cite as attorney-client communications, see Pl. Exs. A, P, Q, U, do not appear to include an attorney as an author or recipient, nor do they purport to relay advice from an agency attorney or general counsel's office. It appears that plaintiffs' counsel simply assumes that Department of Justice ("DOJ") officials such as Deputy Assistants Attorney General or Assistants Attorney General are attorneys or are responsible for providing legal advice, but even a review of the DOJ's web site reveals otherwise, showing non-attorneys holding such positions without any responsibility for providing legal advice. See, e.g., http://www.usdoj.gov/jmd/aagabio.html; http://www.usdoj.gov/jmd/biomarisantangelo.htm. The fourth document cited by plaintiffs, see Pl. Ex. R, does include agency attorneys on the carbon copy ("CC") line, but that inclusion does not act as a talisman to protect communications between non-lawyers. See Upjohn v. United States, 449 U.S. 383, 396 (1981).

The fifth document is characterized as being sent to two OPM lawyers, but actually was directed to one OPM attorney and two non-lawyers, with others on the CC line. See Pl. Ex. S. Out of an abundance of caution, defendant's counsel left this text

unredacted, despite redacting a prior clear attorney-client email in the same email chain, because the cited email appears not to be requesting legal advice as much as conveying the agency's policy position among agency staff. In retrospect, the three words "Okay with you?" could arguably render this message privileged, but whether this was directed to Ms. Watson, an attorney in the OPM Office of the General Counsel, for legal advice, or to Mr. Mikowicz, Manager of Salary and Wages, and Mr. Baker, Senior Advisor to the Deputy Associate Director for the Center for Pay and Performance Policy, as a matter of policy, is questionable. There is also no practical means of producing the document as it pertains to Mr. Mikowicz and Mr. Baker while redacting it as it pertains to Ms. Watson, without revealing the nature of the communication with Ms. Watson. Therefore, we did not waive any privilege by providing this document.

Finally, the fax cover sheet from Mr. Gregory, Chief of the Commercial Law Division of the Bureau of Citizenship and Immigration Services ("CIS"), part of the Department of Homeland Security ("DHS"), appears to be providing factual information to Mr. Tingley, a pay specialist with the DHS, not offering or endorsing any legal advice or interpretation from an agency attorney or a general counsel's office. See Pl. Ex. T. Again, as a practical matter, it would not be feasible to redact the fax cover sheet while producing the discoverable faxed documents,

without also revealing the nature of the communication between Mr. Gregory and Mr. Tingley.

To the extent that the Court determines that any of these documents include privileged attorney-client communications, defendant has not waived its privilege under the Hydraflow test. Defendant thoroughly reviews its document productions and has produced privilege logs asserting attorney-client privilege when applicable. See, e.g., Pl. Exs. V, W. Regarding factors two through four of the Hydraflow test, defendant has not revealed attorney-client communications, but, to the extent the Court disagrees, any such disclosures are both few in number and minor in nature. Even the arguable attorney-client communications discussed above (to Mr. Tingley, and to Ms. Watson among others) are two discreet instances that reveal very little, if any, attorney-client communication. The interests of justice would not favor a wholesale nullification of privilege when defendant has erred, if at all, in favor of providing complete information to plaintiffs, especially where we believe no legal advice is being sought or provided.

Plaintiffs have not demonstrated that defendant has intentionally or selectively disclosed any attorney-client communications for any reason, affirmative, or otherwise. Finally, because we do not assert advice of counsel as the basis of our good faith defense, and have not selectively disclosed

privileged information in support of our good faith defense, the cases upon which plaintiffs rely are not persuasive in this situation.

## CONCLUSION

For the foregoing reasons, we respectfully request that the Court deny plaintiffs' motion to compel the production of information. However, if the Court orders defendant to produce information beyond what is provided in this response, defendant respectfully requests 30 days from the later of the date of the Court's order, or plaintiffs' service of unobjectionable versions of the requests set forth in their motion to compel, to serve any additional production response.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/ Jeffrey S. Pease
JEFFREY S. PEASE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, D.C. 20530
Tel: (202) 353-7991
Fax: (202) 514-8624

March 29, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 29th day of March 2007, a copy of the foregoing “DEFENDANT’S RESPONSE TO PLAINTIFFS’ MOTION TO COMPEL THE PRODUCTION OF INFORMATION” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

s/ Jeffrey S. Pease