IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARTURO MORENO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 05-142C |
| | ) | |
| THE UNITED STATES, | ) | (Judge Firestone) |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

DECLARATION OF MAAME A.F. EWUSI-MENSAH

I, Maame A.F. Ewusi-Mensah, state the following:

1. I am an attorney with the Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C. In that capacity, I am counsel of record in Arturo Moreno, et al. v. United States, No. 05-7142C.

2. Arthur I. Rettinger, counsel for Customs and Border Protection ("CBP"), has served as agency counsel in this matter involving the former Immigration and Naturalization Service ("INS") because when the former INS was dissolved, some of its functions were assumed by CBP. As sole agency counsel from CBP assigned to this matter, Mr. Rettinger is the attorney with principal access to the sources of information requested in the Court's May 3, 2007 order.

3. Shortly before the May 3, 2007 conference between the parties and the Court, I learned that Mr. Rettinger was on an extended leave.

4. Upon issuance of the Court's May 3, 2007, order, I contacted Mr. Rettinger's colleagues to request that they initiate the search for responsive documents in Mr. Rettinger's

absence. I worked diligently with agency counsel to explain to them the requests and impress upon them the deadline set by the Court. Counsel assured me that they, too, were working diligently with the relevant sources of information to locate responsive documents.

5. I understood that the former Immigration and Naturalization Service ("INS") was formerly part of the Department of Justice, and that the Justice Management Division ("JMD") is and was at the time the management arm of the Department of Justice. Accordingly, I contacted counsel for the JMD, and worked diligently with them in an effort to locate responsive documents. JMD counsel informed me in writing that after a thorough search, JMD was unable to locate any responsive documents and was unable to access email accounts of the former INS.

6. I have been working diligently with counsel for OPM to locate documents responsive to Requests Nos. 7-8. Counsel for OPM has located responsive documents, but has indicated that some of these documents may be subject to the deliberative process privilege and that OPM needs time to determine whether to invoke the privilege.

7. It is my understanding that the parties reached a discovery compromise earlier in the case where the United States agreed to prepare declarations from several Federal agencies setting forth their overtime pay policies for attendees of the Federal Law Enforcement Training Center. These declarations were to be in lieu of production of documents from these agencies.

8. I have been working diligently with counsel for the Department of the Interior, the Department of Housing and Urban Development, the Department of State, and the United States Department of Agriculture to prepare declarations setting forth these agencies' FLETC overtime pay policies. These declarations have now been prepared by knowledgeable witnesses,

but additional time is required to consult with these agencies before they grant final approval of the declarations.

9. Upon Mr. Rettinger's return to the office, he contacted me to discuss the search for responsive documents. At that time, I learned that the email searches conducted by Mr. Rettinger's colleagues would not include emails of Immigration and Customs Enforcement ("ICE") or emails of the former Immigration and Naturalization Service ("INS"), and that only ICE would have access to these emails.

10. Shortly after Mr. Rettinger contacted ICE counsel to advise him of the need to search ICE and INS emails, I, too contacted ICE counsel to discuss the search. I have been working diligently with ICE counsel since that time to locate responsive documents.

11. ICE counsel has informed me that, according to ICE's Information Technology personnel, the search for responsive emails of ICE and INS will take at least an additional two to three weeks.

12. Upon Mr. Rettinger's return to the office, he contacted me to discuss the search for responsive documents. At that time, I learned that the email searches conducted by Mr. Rettinger's colleagues consisted of searches for the relevant search terms in the "subject line" of the emails in the accounts of Wayne Coleman, Alethea Smalls, and Ronelle Rotterman.

13. Upon learning this, I asked Mr. Rettinger to conduct additional email searches for the relevant search terms in the body of the emails in the accounts of Wayne Coleman, Alethea Smalls, and Ronelle Rotterman.

14. Mr. Rettinger and I have been informed by CBP Information Technology personnel that determining the cost and time frame for conducting these additional searches will

take at least one week, and the additional searches may take two months or longer given the limitations of the technology used by Customs and Border Protection to store and search these email accounts and the fact that Customs and Border Protection staff responsible for these searches are currently engaged in a large technology migration involving CBP's email software.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 24, 2007.

s/ Maame A.F. Ewusi-Mensah

Maame A.F. Ewusi-Mensah