No. 05-142C
(Judge Firestone)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ARTURO MORENO, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARTIN F. HOCKEY, JR.
Assistant Director

MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

Of Counsel:
ARTHUR RETTINGER
Senior Counsel
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229
Tel: (202) 344-2978
FAX: (202) 344-2950

MELANIE WATSON
Attorney-Advisor
Office of Personnel Management
1900 E Street, NW
Washington, DC 20415
Tel: (202) 606-1700
Fax: (202) 606-0082

December 21, 2007

Attorneys for Defendant

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

A. Standard for Granting Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 6

B. The Statute Of Limitations Applicable To Fair Labor Standards Act Claims Is Two Years, And At Most, Three Years . . . . . . . . . . . . . . . . . . 6

C. Liquidated Damages Pursuant To The Fair Labor Standards Act Are Only Available In Court Under Limited Circumstances . . . . . . . . . . . . . . . . . . 8

II. The Plaintiffs' Claims Are Barred By the Applicable Statute of Limitations . . . 9

A. All Of The Plaintiffs' Claims Fall Well Outside The Two-Year Statute Of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. The Plaintiffs Are Not Eligible For A Three-Statute of Limitations As They Are Unable To Establish That The INS Showed A Reckless Disregard For The Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

C. Equitable Tolling Does Not Apply To The Plaintiffs' Claims . . . . . . . . 13

1. FLSA Does Not Contemplate Equitable Tolling . . . . . . . . . . . . . 13

2. The Plaintiffs Must Show Fraudulent Misrepresentation Regarding

Their Claims For Liquidated Damages . . . . . . . . . . . . . . . . . . . . . 14

3. The Plaintiffs' Attempts To Show A Misrepresentation, And Reliance Upon A Misrepresentation, Are Unavailing . . . . . . . . 17

D. The Other Forms Of Tolling Plaintiffs Request Are Without Basis . . . . 19

III. Liquidated Damages Are Not Available To The Plaintiffs . . . . . . . . . . . . . . . . . 20

A. The Agency Acted In Good Faith and Had Reasonable Grounds To Believe Overtime Was Not Owed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

B. Liquidated Damages Are Not Available To Compensate For Mere Delay . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV. The Proper Focus Of The Court's Inquiry Is Employing Agency's Determination That FLSA Overtime Was Not Owed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

A. FLSA Requires That This Court Examine The Actions Of The Employing Agency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

B. The Employing Agency's Actions After Making The Determination To Pay FLSA Overtime Wages Does Not Justify An Extension Of The Two-Year Statute Of Limitations Or Give Rise To A Liquidated Damages Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## TABLE OF AUTHORITIES

### CASES

Adams v. United States,
350 F.3d 1216 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 21, 29

Addison v. Huron Stevedoring Corp.,
204 F.2d 88 (2d Cir. 1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Anderson v. Liberty Lobby Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Angelo v. United States,
57 Fed. Cl. 100 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 29

Beebe v. United States,
640 F.2d 1283 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

Booth v. United States,
990 F.2d 617 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Brooklyn Savings Bank v. O'Neil,
324 U.S. 697 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Bull v. United States,
68 Fed. Cl. 212 (Fed. Cl. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 21, 29

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Chancellor Manor v. United States,
331 F.3d 891 (Fed. Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Cook v. United States,
855 F.2d 848 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

Curtis v. United States,
144 Ct. C 168 F. Supp. 213 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.A. Schulte, Inc., v. Gangi,
328 U.S. 108 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Doyle v. United States,

931 F.2d 1546 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 29

Doyle v. United States,
20 Cl. Ct. 295, 500 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Ewer v. United States,
63 Fed. Cl. 396 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 19

Glus v. Brooklyn Eastern District Terminal,
359 U.S. 231 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 19

Goldberg v. Whitaker House Coop., Inc.,
366 U.S. 28 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Hickman v. United States,
43 Fed. Cl. 424 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

Holmberg v. Armbrecht,
327 U.S. 392 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 19

Hohnke v. United States,
69 Fed. Cl. 170 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Irwin v. United States,
498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 19

McLaughlin v. Richland Shoe Co.,
486 U.S. 128 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

O'Connell v. Sec'y of Health and Human Servs.,
63 Fed. Cl. 49 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Oja v. Department of Army,
405 F.3d 1349 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19

Overnight Motor Transportation v. Missel,
316 US 572 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Spirit Leveling Contractors v. United States,
19 Cl. Ct. 84, 89 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Sweats Fashions, Inc. v. Pannill Knitting, Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Testan,
424 U.S. 392 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Walling v. Harnischfeger Corp.,
325 U.S. 427 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Zheng v. Liberty Apparel Co.,
355 F.3d 61 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**STATUTES AND REGULATIONS**

5 C.F.R. § 410.402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 21

5 C.F.R. § 551.102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

5 C.F.R. § 551.104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 29

5 C.F.R. § 551.421 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

5 C.F.R. § 551.423 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 29

5 C.F.R. § 551.702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

5 C.F.R. § 551.703 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

29 C.F.R. § 516.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

5 U.S.C. § 1103(a)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 5301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 5302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 5303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 5304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 5304a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 5332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

5 U.S.C. § 5338 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

29 U.S.C. § 203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

29 U.S.C. § 216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

29 U.S.C. § 251 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

29 U.S.C. § 255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 9

29 U.S.C. § 256(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

29 U.S.C. § 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

29 U.S.C. § 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARTURO MORENO, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05-142C |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | (Judge Firestone) |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND**
**<u>OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter summary judgment in our favor and deny the plaintiffs' motion for summary judgment because there are no genuine issues of material fact in this case and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon the pleadings, our brief, and the accompanying Proposed Findings of Uncontroverted Facts.[1]

---

[1] This motion is not being filed under seal as, upon review, none of the documents included in the Appendix are confidential.

The plaintiffs' Proposed Findings of Uncontroverted Fact will be cited as "Pl. F. ¶ _." The plaintiffs' exhibits will be cited as "Pl. Ex. _." The plaintiffs' motion will be cited as "Pl. Mot. _." Our Proposed Findings of Uncontroverted Fact will be cited as "Def. F. ¶ _." The exhibits set forth in the Appendix filed herewith will be cited as "Ex. _." Page numbers from the Appendix will be referred to as "A_."

## QUESTIONS PRESENTED

1. Do the plaintiffs' claims fall outside the two-year statute of limitations in the Fair Labor Standards Act ("FLSA") because they were brought more than two years after they accrued?

2. Are those claims brought more than three years after they accrued barred by the three-year statute of limitations in the FLSA for willful violations?

3. Have the plaintiffs failed to show that the actions of the Immigration and Naturalization Service ("INS") were willful, thereby rendering the plaintiffs unable to benefit from the three-year statute of limitations in FLSA which applies only to willful violations?

4. Have the plaintiffs failed to show justification for equitable tolling of the statute of limitations and any other form of tolling?

5. Has the United States shown that its interpretation of the regulations was in good faith and based upon reasonable grounds, thereby barring recovery of liquidated damages?

6. Are the plaintiffs prevented from seeking liquidated damages because they were paid back overtime wages plus Back Pay Act interest before filing suit?

7. Should the plaintiffs be barred from using the delays inherent in the retroactive payment process to obtain an extension of the statute of limitations and to obtain liquidated damages?

## STATEMENT OF THE CASE

### I. Nature Of The Case

The plaintiffs, a group of employees of the former INS, bring this action to recover liquidated damages and attorneys fees pursuant to the Fair Labor Standards Act. The plaintiffs

all attended law enforcement training at the Federal Law Enforcement Training Center ("FLETC"), and due to the INS's misinterpretation of one term in the governing regulations, they were not paid overtime for the sixth-day per week they spent in training. All but one of the plaintiffs was paid back overtime as well as Back Pay Act interest prior to bringing suit. All of the plaintiffs' claims fall outside the statute of limitations. Accordingly, the plaintiffs seek application of the three-year statute of limitations for willful FLSA violations, equitable tolling of the statute of limitations, and other forms of tolling.

## II. Statement of Facts

For our statement of facts, we respectfully refer the Court to the accompanying Proposed Findings of Uncontroverted Facts, but briefly summarize the facts here. The plaintiffs are former employees of the former INS who were required to attend entry-level training at FLETC before being placed in the field. Def. F. ¶¶ 1-4. After the events of September 11, 2001, FLETC implemented an unprecedented six-day-per-week training schedule to meet the demands of numerous Federal law enforcement agencies to make greater numbers of law enforcement officers available for immediate duty. Def. F. ¶¶ 5-6. When asked to determine whether or not FLSA and governing OPM regulations authorized payment of overtime to these trainees, INS pay personnel consulted FLSA, governing regulations, past OPM guidance and their decades of experience in the field of Federal pay. Def. F. ¶¶ 14-22. The regulation at issue stated that overtime was not authorized for entry-level training outside "regular working hours." 5 C.F.R. § 551.423(a)(3). INS personnel did not realize at the time that "regular working hours" was a defined term elsewhere in the regulations, and interpreted it to mean the 40-hour work week.

Def. F. ¶¶ 20-21. OPM pay personnel, and pay personnel at several other Federal agencies made the same error in independently interpreting the regulations. Def. F. ¶ 32.

Upon realizing the error, OPM issued new guidance clarifying that FLSA indeed authorized overtime pay to the FLETC trainees on the six-day schedule. Def. F. ¶¶ 37-57. In the meanwhile, DHS had been created, and ICE assumed responsibility for handling the overtime issue for employees of the former INS. Def. F. ¶ 46-49. ICE made the decision to pay the trainees back overtime wages in addition to Back Pay Act interest, and began the process of doing so for 4,000 employees, who were at the time spread among several different Federal agencies or out of Federal service altogether. Def. F. ¶¶ 58-78. Just before receiving his payment, plaintiff Moreno filed suit in this Court. Def. F. ¶ 86. The remaining plaintiffs filed suit several months after receiving back overtime wages in addition to Back Pay Act interest, some waiting to file suit until nearly one and a half years had passed. Def. F. ¶¶ 79-86.

The plaintiffs who have now all been paid back overtime wages and Back Pay Act interest, seek liquidated damages and attorneys fees.

## SUMMARY OF THE ARGUMENT

The plaintiffs lawsuit, an attempt to recover liquidated damages and attorneys' fees after their employer has already paid them back overtime wages plus Back Pay Act interest, fails for several reasons. First, all of the plaintiffs' claims fall outside the two-year statute of limitations as none of them brought suit within two years of attending training at the FLSA. Those few that might fall within the three-year statute of limitations for willful violations also fail because they cannot show willfulness on the part of the agency. As the undisputed facts illustrate, in coming to the wrong interpretation of one term in the overtime regulation, INS's pay personnel did not

act recklessly. Rather, they acted diligently, and even consulted past guidance on the regulation issued by the agency which promulgated the regulation, the Office of Personnel Management. None of the plaintiffs would be eligible for equitable tolling or any other form of tolling if such tolling was even available in a FLSA case, which it is not: The plaintiffs are suing for liquidated damages and attorneys fees but cannot show either that any misrepresentations were made to them about these forms of relief, or that they relied upon these misrepresentations to their detriment.

Second, even if the plaintiffs' claims were not time-barred, they still fail because the Government can show that its interpretation was made in good faith and on reasonable grounds, with the honest intention to comply with the FLSA. In fact, several other agencies, including the Office of Personnel Management ("OPM," which promulgated the regulations) also interpreted it incorrectly. The only way plaintiffs can paper over their inability to show the requisite state of mind of the INS is to impute the knowledge of each Federal agency involved (whether or not it was the FLSA "employer") to the INS. This is inappropriate and without legal basis. The focus of the Court's inquiry should be the employing agency's determination that FLSA overtime wages were now owed. The Court should not base its decision on the state of mind of the entire United States Government. It was the employing agency that owed the plaintiffs the wages. The plaintiffs also seek to use the delays inherent in the retroactive payment process to their advantage. This Court should not permit them to obtain a windfall from these unforeseen and largely unavoidable circumstances. For these reasons, as discussed in greater detail below, this Court should deny the plaintiffs' motion for summary judgment and grant the cross-motion of the United States.

## ARGUMENT

### I. Applicable Law

#### A. Standard for Granting Summary Judgment

The familiar standards of summary judgment need only a brief re-statement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

#### B. The Statute Of Limitations Applicable To Fair Labor Standards Act Claims Is Two Years, And At Most, Three Years

The Fair Labor Standards Act establishes a two-year statute of limitations for violations of the Act. 29 U.S.C. § 255. Where, however, the violation was "willful," the statute of limitations is extended to three years. 29 U.S.C. § 255 (2006). Therefore, if a cause of action has accrued between two and three years prior to the commencement of the action, the ability of the plaintiffs to bring those cases hinges upon whether the violation committed by the employer was willful. "Willfulness" under § 255(a) only occurs when an employer makes the initial decision recklessly or knowingly with regard to the potential for FLSA violation—a question of

mental state. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 135 (1988). See 29 U.S.C. § 255(a). 5 C.F.R. § 551.104 ("Willful violation means a violation in circumstances where the agency knew that its conduct was prohibited by the Act or showed reckless disregard of the requirements of the Act. All of the facts and circumstances surrounding the violation are taken into account in determining whether a violation was willful."). Where an agency's action is unreasonable and negligent, but not intentional or deliberate, it is not willful. McLaughlin, 486 U.S. at 135 n.13 (explaining that under the standard announced in that case, "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation," it should not be considered to have acted willfully); Angelo v. United States, 57 Fed. Cl. 100, 109 (2003).

The statute of limitations for FLSA claims begins to run when the claim accrues. 29 U.S.C. § 255(a). For overtime claims, the claim accrues when the days giving rise to the overtime claim are worked. Cook v. United States, 855 F.2d 848, 851 (Fed. Cir. 1988) (stating that "the usual rule" is "a claim for unpaid overtime under the FLSA accrues at the end of each pay period when it is not paid."); Beebe v. United States, 640 F.2d 1283, 1293 (Ct. Cl. 1981)("[A] separate cause of action accrued each payday when the [employer] excluded the overtime compensation they claim in this suit. This is the correct rule of law.").

Equitable tolling of the FLSA statute of limitations is not available against the Government as the extended statute of limitations for willful violations serves the same purpose that equitable tolling otherwise would. Doyle v. United States, 20 Cl. Ct. 295, 500 (1990). In any event, equitable tolling is "an exceptional remedy, reserved for extraordinary circumstances, which federal courts have typically extended . . . only sparingly." O'Connell v. Sec'y of Health and Human Servs., 63 Fed. Cl. 49, 63 (2004) (quotations omitted). Even if equitable tolling

were to be available, none of the required circumstances are present. In this case, there was (1) no defective pleading filed during the statutory period; (2) the plaintiffs have not been "induced or tricked" into allowing the filing deadline to pass; and (3) the plaintiffs' damages were not "inherently unknowable." Ewer v. United States, 63 Fed. Cl. 396, 401 (2005) (quoting Hickman v. United States, 43 Fed. Cl. 424, 427 n.4 (1999)). It bears emphasis that where a plaintiff seeks to rely on the second prong, he must show a fraudulent misrepresentation as to the basis of his claim. See Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946). That is, he must show that the defendant fraudulently misrepresented to him the time he had to file his claim. Irwin v. United States, 498 U.S. 89, 96 & n.4 (1990); Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 235 (1959).

### C. Liquidated Damages Pursuant To The Fair Labor Standards Act Are Only Available In Court Under Limited Circumstances

The Fair Labor Standards Act sets forth the criteria for a grant of liquidated damages to a plaintiff suing for unpaid overtime compensation. Liquidated damages are only available in a court action. See 29 U.S.C. § 216(b) (discussing "an action to recover the liability prescribed in the preceding two sentences," which include reference to liquidated damages (emphasis added)); 29 U.S.C. § 260 (stating that a court may decline to award liquidated damages under certain circumstances "[i]n any action" (emphasis added)). Even in a court action, though, a determination that "the plaintiffs are entitled to recover overtime pay . . . [does] not automatically entitle plaintiffs to liquidated damages." Beebe, 640 F.2d at 1295. In fact, this Court may deny a claim of liquidated damages altogether if an employer shows (1) that the act or omission giving rise to the failure to pay overtime compensation was in good faith; and (2) that the employer had reasonable grounds to believe that his act or omission was not a violation of

the Act. 29 U.S.C.

§ 216(b); 29 U.S.C. § 260. "This discretion to award liquidated damages, however, does not extend to a liquidated damages award for interest or delay damages against the United States." Doyle v. United States, 931 F.2d 1546, 1550 (Fed. Cir. 1991) .

To determine whether the employer's act or omission was in "good faith," this Court undertakes a subjective inquiry into the "honest intention" to comply with FLSA. Addison v. Huron Stevedoring Corp., 204 F.2d 88, 93 (2d Cir. 1953); Bull v. United States, 68 Fed. Cl. 212, 275 (Fed. Cl. 2005); Beebe, 640 F.2d at 1295. With respect to the "reasonable grounds" prong, the Court must determine, by focusing on the employer's reasoning, whether the employer had objectively "reasonable grounds" for its belief in FLSA compliance. Bull, 68 Fed. Cl. at 275; see also 29 U.S.C. § 260. It is relevant to this inquiry that the question at issue is "uncertain, ambiguous, or complex." See Adams v. United States, 350 F.3d 1216, 1227 (2003) (quoting Beebe, 640 F.2d at 1295 (1981).

## II. The Plaintiffs' Claims Are Barred By the Applicable Statute of Limitations

### A. All Of The Plaintiffs' Claims Fall Well Outside The Two-Year Statute Of Limitations

All of the plaintiffs' claims fall outside the two-year statute of limitations. Pursuant to the FLSA, unless a plaintiff can show a willful violation of the statute, any FLSA claims are subject to a two-year statute of limitations. 29 U.S.C. § 255(a). The statute of limitations begins to run when the claim accrues. 29 U.S.C. § 255(a). See Cook, 855 F.2d at 851; Beebe, 640 F.2d at 1293. For overtime pay claims, as with other pay claims, the claim accrues when the days subject to the pay are worked. See Cook, 855 F.2d at 851; Beebe, 640 F.2d at 1293.

Accordingly, for the plaintiffs, their claims accrued, and the statute of limitations began

to run when they attended the FLETC sixth-day training sessions. Moreno attended FLETC between June and August 2002. Pl. Ex. 1. He filed suit in this Court in January 2005, well over two years after his claims accrued. Def. F. ¶ 85. Similarly, the remaining plaintiffs attended FLETC sometime after January 1, 2002 and before the end of August 2003. Pl. F. ¶ 2. Pursuant to FLSA, the action did not commence for any of these plaintiffs until they filed a written consent to sue. 29 U.S.C. § 256(b). These plaintiffs began filing consents to sue and joining this action in May 2006, again well over two years after any of their claims had accrued.[2] Def. F. ¶ 86. Therefore all of the plaintiffs' claims fall outside the two-year statute of limitations.

It appears many of the plaintiffs' claims fall outside even the three-year statute of limitations which applies to willful violations, as well. The first consent to sue (other than Moreno) was filed May 23, 2006. Def. F. ¶ 86. There can be no dispute that any claims (besides that of Moreno himself) regarding attendance at FLETC prior to May 23, 2003, fall outside the three-year statute of limitations. Given that the plaintiffs attended FLETC between January 2002 and August 2003, a large portion of them fall outside of the three-year statute of limitations.

**B. The Plaintiffs Are Not Eligible For A Three-Year Statute of Limitations As They Are Unable To Establish That The INS Showed A Reckless Disregard For The Law**

Because all of the plaintiffs' claims fall outside the two-year statute of limitations, the plaintiffs attempt to establish that the INS acted willfully in order to take advantage of the three-

[2] Because this lawsuit is designated a collective action, the action does not commence for any plaintiff (besides those named in the initial complaint) until they file a consent to sue. 29 U.S.C. § 256 (b).

year statute of limitations applicable to willful violations of FLSA.[3] To prevail, the plaintiffs must show that their claims fall within the three-year statute of limitations, and that the INS acted with a reckless disregard for the requirements of the law. The undisputed facts establish just the opposite: INS pay personnel were consistently and conscientiously concerned about applying FLSA properly. When INS made its initial determination that overtime was not authorized, INS pay personnel, including Wayne Coleman (a pay specialist with nearly twenty years of Federal experience), relied upon years of experience in the pay field, their experience working with the statutes and regulations at issue, their reading of the overtime regulations and past guidance of OPM on the topic. Def. F. ¶¶ 14-21. Mr. Coleman diligently considered 5 C.F.R. § 551.423, which governed FLSA overtime, as well as 5 C.F.R. § 410.402, which governed non-FLSA overtime. Id. As OPM had promulgated 5 C.F.R. § 551.423, Mr. Coleman's review of past guidance was appropriate.

Just as with the pay specialist whose reasoning was the focus of Adams, 350 F.3d at 1228, Mr. Coleman considered the applicable regulations, and just got the answer wrong. In this case, this was because he failed to realize that "regular working hours" was a defined term which did not correspond to the usual 40 hour work week that prevails in the Federal system. Def. F. ¶¶ 14-21. Just as with the pay specialist in Adams, Mr. Coleman's reliance upon his understanding of "regular working hours" should not be held against the agency. Even if this Court finds it was unreasonable for Mr. Coleman to fail to do more than he did, to be willful, his actions must have been "intentional" and "deliberate" to trigger the three-year statute of

[3] As discussed further below, the employer for purposes of this inquiry is the employing agency, namely INS. See Section IV, supra.

limitations. Mr. Coleman's actions were neither. In fact, his actions were vastly differently from cases in which this Court has found an agency to have acted willfully. In those cases, the Court found the agency to have acted willfully because it failed altogether to discern the requirements of FLSA. See, e.g., Bull, 68 Fed. Cl. At 274-274. Rather, Mr. Coleman's error arose in the course of his concerted effort to discern the requirements of the law.

In their motion, plaintiffs claim, "Perhaps most telling of Defendant's intentions is that even after acknowledging that the law required overtime pay for Plaintiffs 6th day of training, it continued to withhold overtime pay and misrepresent to the Plaintiffs that they were not entitled to overtime." Pl. Mot. 25. This statement is extremely misleading and incorrect. As demonstrated in our Proposed Findings of Fact and the documents in the accompanying Appendix, pay personnel of the former INS was not made aware of any change in OPM's guidance on this issue until February 2003. Def. F. ¶ 43. At the same time, DHS was being formed, yet the new agencies that were to be created from the former INS had not yet been completely integrated. Def. F. ¶¶ 46-47. Given the magnitude of the change, and given OPM's role in advising Federal agencies on pay issues, DHS's decision to wait for formal guidance from OPM on the topic does not show "reckless disregard" for the law. Similarly, OPM's consideration of the views of DHS and other Federal agencies on this issue also showed a deliberate effort to comply with the law, not a deliberate effort to evade it. What was being discussed implicated over 4,000 employees, and was the result of a mistake that had been made by pay personnel at several agencies besides INS. For DHS to proceed without official guidance from OPM, or for OPM to rush to issue ill-considered new guidance would have been inappropriate and risked compounding the problem that had already been created. Accordingly,

to the extent that this Court even finds it necessary to examine the process by which DHS came to reverse the decision made earlier by INS, it should find that this process, too, demonstrated that the employing agency's failure to pay overtime wages initially was neither intentional nor deliberate.

### C. Equitable Tolling Does Not Apply To The Plaintiffs' Claims

Knowing that all of their claims fall outside the two-year statute of limitations and most fall outside the three-year statute of limitations, and recognizing that it will be difficult to establish willfulness given the undisputed facts, the plaintiffs seek to avoid application of any statute of limitations by arguing for the imposition of equitable tolling. Pl. Mot. 26-32. The core of their argument is as follows: (1) the Government makes the laws; (2) the Government told the plaintiffs overtime was not authorized under FLSA; (3) in truth, overtime was authorized under FLSA; (4) therefore, the Government made a misrepresentation to the plaintiffs justifying the tolling of the statute of limitations. As established below, this analysis has no support in the law of equitable tolling or in common sense. Following the plaintiffs' reasoning, any time a Federal agency makes an erroneous interpretation of the law and communicates it to its employees, equitable tolling should be imposed because the Federal agency is part of the Federal Government which makes all of the laws governing pay. The plaintiffs' theory must be rejected.

#### 1. FLSA Does Not Contemplate Equitable Tolling

FLSA does not contemplate equitable tolling. Equitable tolling is rarely available against the Government, and only where an examination of the statute permits it. In fact, Congress can overcome the rebuttable presumption that equitable tolling applies by the manner in which it sets fort the statute of limitations. Oja v. Department of Army, 405 F.3d 1349, 1358 (Fed. Cir. 2005).

For example, equitable tolling will not be available where Congress has set forth the statute of limitations in an "unusually emphatic form" or where it specifies that the statute of limitations shall run from the date of plaintiffs' knowledge of his claim. Id. In the FLSA context, where a plaintiff necessarily knows the factual predicates for his claim—that he worked and was not compensated—no additional direction from Congress should be needed. Further, where Congress has already provided an extension to the statute of limitations, tolling should not apply to further extend the statute of limitations. This Court has held with respect to FLSA:

> From [the legislative history] it appears that in cases where the government has acted in good faith, as here, Congress did not think liquidated damages would be necessary. As there is no apparent congressional intent to the contrary, tolling of the statute of limitations would not be necessary. Plaintiffs would not necessarily be any more whole since it is not clear that liquidated damages would be awarded even if the statute were tolled, as the court has discretion to award liquidated damages where there has been good faith on the part of defendant. If on the other hand, defendant's actions could be deemed willful, rendering section 260 inapplicable, tolling would be appropriate. However, in the case of willfulness, Congress eliminated the need for equitable tolling by expressly providing that the statute of limitations is extended to three years.

Doyle, 20 Cl. Ct. at 500. Therefore, the rationale typically used to impose equitable tolling is simply not present: willful violations already carry a longer statute of limitations under FLSA, and the plaintiffs are not entitled to any more.

### 2. The Plaintiffs Must Show Fraudulent Misrepresentation Regarding Their Claims For Liquidated Damages

Even if this Court determines that equitable tolling against a Federal agency is permissible in FLSA cases generally, it should find that equitable tolling is not available under the circumstances of this case. To obtain the benefits of equitable tolling, the plaintiffs must

show either: (1) there was a defective pleading filed during the statutory period; (2) they have been "induced or tricked" by their adversary into allowing the filing deadline to pass; or (3) their damages were "inherently unknowable." Ewer, 63 Fed. Cl. at 401 (quoting Hickman v. United States, 43 Fed. Cl. 424, 427 n.4 (1999)). The plaintiffs do not argue that there was a defective pleading or that their damages were unknowable. Instead, they argue that they were induced or tricked into allowing the filing deadline to pass. Pl. Mot. 27 ("There can be no doubt that Plaintiffs were 'tricked' by Defendant's misrepresentations and false promises. . . . . Defendant's misrepresentations are not of the garden variety. They are misrepresentations about the law by the very authority charged with promulgating it."). Despite vigorous argumentation, however, the plaintiffs can point to no facts and no evidence supporting this argument.

The touchstone of equitable tolling is a fraudulent misrepresentation. See Irwin, 498 U.S. at 96 & n.4; Glus, 359 U.S. at 235; Holmberg, 327 U.S. at 397; Ewer v. United States, 63 Fed. Cl. at 401. In this case, no representations at all, much less misrepresentations, or fraudulent misrepresentations were made to the plaintiffs regarding the claims they bring before this Court. It bears repeating that the gravamen of the plaintiffs' claims are that they are owed liquidated damages and attorneys fees, not back pay. As stated in their motion, "Plaintiffs brought this FLSA collective action to recover the liquidated damages FLSA requires but the Defendant failed to pay. Defendant admits it was obligated to pay FLSA overtime but refuses to pay the liquidated damage portion of FLSA liability." Pl. Mot. 1. Particularly since all of the plaintiffs (with the possible exception of Moreno) were paid back overtime wages as well as Back Pay Act interest prior to filing suit, there are no other claims in the case. Therefore, to show equitable tolling of their claims for liquidated damages, they must show that the INS made

a fraudulent misrepresentation to them regarding their claims for liquidated damages.

For these reasons, the plaintiffs' repeated references to alleged misrepresentations to the plaintiffs about other matters are irrelevant. See, e.g., Pl. Mot. 27 ("First, Defendant told Plaintiffs that they were not entitled to FLSA overtime, even though it knew to the contrary. Then it promised to make 'complete payment as required.' This statement was compounded by further later assurances that Defendant was doing all it could to get Plaintiffs payment whenever questions were raised."), 29 ("Beginning in early 2002, Defendant misrepresented to Plaintiffs that the law prohibited them from being paid overtime for the sixth eight-hour day of work, despite clear law to the contrary.").

A simpler case for rejecting equitable tolling there could not be: no representations of any kind were made to any of the plaintiffs regarding their potential claims for liquidated damages. The plaintiffs were consistently told only that they would receive back overtime wages and Back Pay Act interest. Def. F. ¶ 84. Accordingly no misrepresentations were made regarding liquidated damages, and certainly no fraudulent misrepresentations were made regarding liquidated damages, and their attempt to avoid the statute of limitations governing their liquidated damages and attorneys fees claims must fail.

The plaintiffs have pointed to nothing showing that the plaintiffs were affirmatively told they would receive liquidated damages. Def. F. ¶ 84. Although the Government produced thousands of pages of email correspondence in discovery, the plaintiffs were unable to find even one email where any employee was told he would receive liquidated damages. Even the declaration submitted by the Moreno, the lead plaintiff, is entirely devoid of any reference to liquidated damages. Pl. Ex. 1. Similarly, the plaintiffs' 83-paragraph proposed findings of fact

do not contain a single supported factual allegation that the plaintiffs were ever told that they would be receiving liquidated damages. This is because all of the evidence points in the other direction: no representations were made regarding liquidated damages.

### 3. The Plaintiffs' Attempts To Show A Misrepresentation, And Reliance Upon A Misrepresentation, Are Unavailing

Given the absence of evidence in the record regarding liquidated damages, the plaintiffs attempt to manufacture such evidence by pointing to two documents in the record, neither of which show a representation, a misrepresentation, or a fraudulent misrepresentation. The plaintiffs point to an email from a human resources employee at the Department of Justice (INS's parent agency) to Immigration and Customs Enforcement ("ICE") pay personnel in order to show that the INS made a fraudulent misrepresentation to the plaintiffs regarding their potential claims for liquidated damages. Pl. Mot. 14, Pl. Ex. 27. This piece of "evidence" fails on its face. It was clearly neither sent to nor received by any of the plaintiffs. Pl. Ex. 27. Further, it does not discuss claims for liquidated damages. Id. All it contains is a passing reference to liquidated damages in the course of describing a different reimbursable agreement relating to another dispute. Id. The documents pertaining to the actual reimbursable agreement relating to this dispute contain no reference to liquidated damages, and there is simply no other record evidence that includes a reference to liquidated damages.[4] Def. F. ¶ 74.

[4] The "liquidated damages" reimbursable agreement discussed in the email was one sent on "12/24." Pl. Ex. 27. It is beyond dispute that the reimbursable agreement at issue in this case was formally requested and concluded in September 2004. Def. F. ¶¶ 70-74. To the extent that the Court even finds this email to be relevant, the most reasonable conclusion to draw is that the reference to liquidated damages was unintentional and flatly erroneous.

The plaintiffs also point to an abbreviated line item description on an earnings statement to show that the INS tricked the plaintiffs into thinking they would be receiving liquidated damages. Pl. Ex. 23; Pl. Mot. 27, 31. The plaintiffs have completely misunderstood the earnings statement. The line item they reference is a global line item which the National Finance Center uses to account for Back Pay Act interest payments, as well as for liquidated damages payments. Def. F. ¶¶ 81-82. That an amount appears under this line item does not show that it is for liquidated damages as it is a global line item. Id. Further, there is absolutely no evidence that the plaintiffs understood it that way. To the contrary, the undisputed facts show the plaintiffs were only told that, if authorized, they would receive back overtime wages and Back Pay Act interest. Pl. Ex. 26.

The plaintiffs also attempt to impute a fraudulent mental state to the INS by pointing out that FLETC did not display a poster of FLSA rights. Pl. Mot. 31-32. No such poster is required in the Federal workplace. The regulation cited by the plaintiffs, 29 C.F.R. § 516.4, as they concede, applies only to private employers. Pl. Mot. 32, n.4. Accordingly, the failure to display one cannot be used to support a claim of fraudulent misrepresentation.[5] In fact, this argument has already been rejected by this Court in another FLSA case where a plaintiff tried to point to the removal of a FLSA poster as evidence to support equitable tolling. As this Court found, given that the plaintiffs in that case were already on notice that FLSA applied to them, the absence of a FLSA poster could not support equitable tolling. Doyle, 20 Cl. Ct. at 501. The

[5] To the extent that the plaintiffs seek to challenge OPM's determination that no such posting is required, such a claim is not properly before this Court as it is not in the plaintiffs' complaint. Second Am. Compl. Therefore, given that OPM's decision not to require such a poster cannot be challenged here, the absence of such a poster is not relevant.

plaintiffs in this case have not raised any genuine issue of material fact as to whether they were on notice that FLSA applied to them. To the contrary, one of their allegations concerns an email communication they received which specifically referenced FLSA in response to their inquiries regarding overtime pay. Pl. Ex. 26. This email communication, received well before the statute of limitations had run on any of their claims certainly put them on notice and bars their request for equitable tolling years later.[6]

Finally, assuming that the plaintiffs are able to show any misrepresentations regarding their claims for liquidated damages, they bear the burden of showing that they relied upon these misrepresentations in waiting to file their suit for liquidated damages. See Irwin, 498 U.S. at 96 & n.4; Glus, 359 U.S. at 235; Holmberg, 327 U.S. at 397; Ewer, 63 Fed. Cl. at 401. The plaintiffs have completely failed to show any reliance whatsoever. See Pl. Ex. 1. Their equitable tolling claim must be rejected.

**D. The Other Forms Of Tolling Plaintiffs Request Are Without Basis**

Plaintiffs seek other forms of tolling based upon the alleged "extraordinary delays" in notice being mailed to the potential opt-in plaintiffs and because Moreno's case in the Federal District Court for the District of Columbia was dismissed for lack of jurisdiction. Pl. Mot. 33. Neither of these are grounds for further tolling of the statute of limitations. As discussed above, the availability of equitable tolling is in FLSA cases is itself a contested issue. The availability of any other form of tolling is, however, beyond serious dispute. Any form of tolling implicates

[6]The plaintiffs attended FLETC between January 2002 and August 2003. Pl. F. ¶ 2. The statute of limitations on even the earliest claims (i.e., those from January 2002) did not run until January 2004. The Department of Homeland Security ("DHS") broadcast email was received in May 2003, well before this. Pl. Ex. 26.

sovereign immunity, Oja, 405 F.3d at 1357, and therefore must be undertaken with caution. There is no authority in this Court or in the Federal Court of Appeals for the Federal Circuit for any form of tolling outside the limited form of equitable tolling discussed above. The cases cited by the plaintiffs are unavailing as none concern the United States as a defendant. See Pl. Mot. 33. To create a new form of tolling would be to broaden unreasonably the United States' sovereign immunity in these cases.

Furthermore, the equities do not support the tolling the plaintiffs request. As established above, the plaintiffs had notice of their FLSA rights long before the statute of limitations had run. Pl. Ex. 26. Any delay in the mailing of a notice to them cannot change this and should not entitle them to more time to file suit. Similarly, the fact that Moreno improperly filed in the wrong court also does not militate in favor of tolling the statute of limitations. Moreno's case was dismissed, not transferred, so he cannot rest on his earlier filing date. Def. F. ¶ 85. This is especially true given that he took over two months to file his complaint in this Court. Def. F. ¶¶ 85-86. And his co-plaintiffs never filed until nearly three years had gone by. Def. F. ¶ 86. This Court should reject all of the plaintiffs' claims for tolling.

## III. Liquidated Damages Are Not Available To The Plaintiffs

### A. The Agency Acted In Good Faith and Had Reasonable Grounds To Believe Overtime Was Not Owed

This Court should grant summary judgment in the Government's favor on the issue of liability for liquidated damages and attorneys fees because the employing agency's acts and omissions giving rise to the failure to pay overtime were in good faith and the employing agency had good reason to believe that its acts and omissions did not violate the FLSA.

An employer's acts and omissions are in "good faith" where the employer has an "honest intention" to comply with FLSA. Bull v. United States, 68 Fed. Cl. 212, 275 (Fed. Cl. 2005). The undisputed facts show that the INS had an honest intention to comply with FLSA. As established above, Mr. Coleman relied upon years of experience in the pay field, his experience working with the statutes and regulations at issue, his reading of the overtime regulations and past guidance of OPM on the topic. Def. F. ¶¶ 14-21. Just as with Ms. Robinson in Adams, 350 F.3d at 1228, Mr. Coleman considered the applicable regulations, but reached the wrong conclusion. In this case, this was because he failed to realize that "regular working hours" was a defined term which did not correspond to the usual 40 hour work week that prevails in the Federal system. Def. F. ¶ 20. It was not for lack of an honest intention to comply with the FLSA.

Mr. Coleman's actions, and that of the INS, therefore, stand in stark contrast to cases where this Court has found that good faith has not been established. For example, in Bull, the Court found that the Defendant had not shown good faith as the defendant "did nothing to ascertain what the FLSA requires and to act in accordance with it." 68 Fed. Cl. At 275-276 (citations and quotations omitted). As demonstrated above, Mr. Coleman took numerous steps to ascertain what the FLSA required. Def. F. ¶¶ 14-21.

The INS's sincere desire to comply with FLSA is demonstrated by the fact that it attempted to use other available means to compensate its employees for their sixth day of training. Applicable regulations did not permit INS to pay overtime for training unless authorized by FLSA. See 5 C.F.R. § 410.402. Because INS had determined that FLSA did not authorize overtime wages for FLETC trainees, INS sought an exemption from 5 C.F.R.

§ 410.402 to permit it to compensate FLETC trainees for the sixth day of training at FLETC. Pl. Ex. 18. In its memorandum to the Department of Justice ("DOJ"), its parent agency, setting forth the request, INS officials state that the fact that overtime is not authorized under FLSA "creates tremendous inequities." Pl. Ex. 18, p. 1. It nearly goes without saying that had INS not had an honest intention to comply with FLSA, it would not have sought an exemption from applicable regulations for the sole purpose of compensating for the sixth day of training. INS's request for this exemption cannot be reconciled with the plaintiffs' allegation that the INS acted without an honest intention to comply with FLSA.[7]

An examination of the INS pay personnel's reasoning in determining that overtime was not authorized demonstrates that they had also had objectively reasonable grounds to believe that overtime was not authorized and prohibited, and therefore that a failure to pay was not a violation of the FLSA. First, the question was one that was uncertain at the time. FLETC had not operated on a six-day schedule for entry-level recruits prior to September 11, 2001. Def. F. ¶¶ 5-6. To the extent that the question of overtime for training had been addressed before, the focus of the inquiry had been whether the training was "entry-level training" and whether the training extended beyond eight hours <u>in one day</u>. Pl. Ex. 16, at MOR-3701. The clear guidance from OPM on these issues was that overtime compensation was not available under either of

---

[7] Paradoxically, the plaintiffs try to use <u>DOJ's</u> decision not to pursue the exemption as evidence that <u>INS</u> was not acting in good faith when it determined that overtime wages were not due. Pl. Mot. 10. The plaintiffs also inappropriately cite the DOJ's decision to support their contention that the INS's legal determination was driven by budgetary constraints. <u>Id.</u> This contention is completely unsupported by the document at issue, and the plaintiffs' use of this document for this purpose is disingenuous. The DOJ memorandum is clearly addressing discretionary <u>non-FLSA</u> overtime, and therefore has no bearing on how INS determined that FLSA did not permit overtime wages. <u>Id.</u>

these

circumstances. See, e.g., Pl. Ex. 13. Accordingly, it was objectively reasonable for INS pay personnel to come to the same conclusion when faced with the six-day problem.

The fact that INS's determination was objectively reasonable is borne out by the fact that OPM itself, as well as several other Federal agencies, independently came to the same determination. OPM, the very agency that promulgated the relevant regulations and had issued the prior guidance, independently determined that entry-level trainees could not receive overtime wages. Def. F. ¶¶ 22-31. Further, at least four other agencies, namely the State Department, the Bureau of Land Management, the Department of Housing and Urban Development, and the United States Department of Agriculture Forest Service, all came to the same conclusion: FLETC trainees were not authorized to receive overtime wages pursuant to FLSA. Def. F. ¶ 32.

The plaintiffs argue that the INS's failure to look to the regulation's definition of "regular working hours," and its determination that that term referred to the 40-hour work week were unreasonable. In light of the extensive experience of the pay personnel in this field, their reliance upon their experience and their knowledge of common parlance in the field is anything but objectively unreasonable. As mentioned above, that several pay personnel made this same determination confirms this. Def. F. ¶¶ 31-32.

Finally, the plaintiffs point to the presence of the word "obsolete" to indicate that INS's consultation of FPM Letter 551-17 was unreasonable. First, the plaintiffs have grossly distorted the facts surrounding FPM Letter 551-17. On December 31, 1993, OPM issued a "FPM Sunset Document", which abolished the FPM but provisionally retained until 1994 certain sections as "material that is being retained because it contains process instructions, critical case law, ensures

consistency of action throughout Government, or authorizes agency action." Def. F. ¶¶ 10-11. Pay personnel at various Federal agencies often consulted the "provisionally retained" FPM letters in making determinations regarding pay, even after the publication of the Sunset Document. Def. F. ¶ 12. FPM Letter 551-17, entitled "Time Spent in Training as Hours of Work Under FLSA" (January 28, 1981), was one of the "provisionally retained" letters. Pl. Ex. 13 (labeled "retain until superseded"). Def. F. ¶ 13. There is no indication in FPM Letter 551-17 or the FPM Sunset Document that OPM had made a determination that the guidance in FPM Letter 551-17 was not correct.

Second, it is clear from the deposition testimony that all of the relevant personnel understood precisely the status of the FPM letters, and consulted them as evidence of past guidance of OPM on the issue at hand.[8] The plaintiffs certainly cannot dispute that the FPM Letter was indeed evidence of past guidance of OPM. They also cannot dispute that a review of past guidance of OPM, was a reasonable and appropriate part of making an adequate inquiry into the agency's FLSA obligations. INS acted in good faith in attempting to determine whether FLSA overtime wages were owed, and its conclusion that FLSA overtime wages were not owed, although erroneous, was based upon reasonable grounds. Under these circumstances, the plaintiffs cannot recover liquidated damages and attorneys fees.

**B. <u>Liquidated Damages Are Not Available To Compensate For Mere Delay</u>**

This Court should not make an award of liquidated damages if it finds that the INS acted in good faith and had reasonable grounds for its belief in the rightness of its actions. This result is dictated by the additional reason that the plaintiffs have already received their back wages as

[8] Ex. 30 (Draper Depo.), 41:16-42:21; Ex. 32 (Coleman Depo.), 88:2-89:2.

well as a Back Pay Act interest payment, and all but one received this relief prior to filing suit. The plaintiffs seek liquidated damages merely to compensate them for the INS's alleged delay in payment of overtime wages. This is a disguised request for interest, which is categorically prohibited in this Court.

To bring any claim against the United States, a plaintiff must show that the United States has waived its sovereign immunity against suit regarding that claim by statute. The jurisdiction of this Court is limited; this Court possesses jurisdiction only over claims where the United States has waived its sovereign immunity from suit. United States v. Testan, 424 U.S. 392, 399 (1972); Booth v. United States, 990 F.2d 617, 619 (Fed. Cir. 1993). Any waiver of sovereign immunity must be strictly construed. Chancellor Manor v. United States, 331 F.3d 891, 898 (Fed. Cir.2003) ("Waivers of sovereign immunity are construed narrowly.").

It is well-established that the United States has not waived its sovereign immunity for suits for interest under the FLSA. Similarly, the United States has not waived its sovereign immunity for suits for interest disguised as suits for liquidated damages. Where a claim for liquidated damages is premised upon delay in payment of the underlying wages, this Court may not award liquidated damages. Doyle, 20 Cl. Ct. at 505-506.

The agency made the determination to pay the plaintiffs their unpaid overtime wages and began the process of payment in August 2003, prior to the filing of the plaintiffs' lawsuit. Def. F. ¶¶ 58, 85-86. The vast majority of the four thousand employees involved (all but 300) received a payment of back overtime wages plus Back Pay Act interest in December 2004, also before the filing of the lawsuit. Def. F. ¶ 79. All of the employees were paid by June 2005, which was nearly one year before any of the plaintiffs (besides Moreno) joined the lawsuit. Def.

F. ¶¶ 79, 86. Accordingly, the plaintiffs' claim for liquidated damages arises primarily from their claim that the agency delayed in payment. Even the plaintiffs' counsel's communications with prospective plaintiffs confirm this. Counsel states that the Moreno plaintiffs are seeking liquidated damages which are "a predetermined amount to compensate for the loss of having the wages when they were due." Ex. 27 (Getman Law website) (emphasis added). Pursuant to the persuasive reasoning of Doyle, liquidated damages are unavailable under these circumstances.

The legislative history of the Portal-to-Portal Act of 1947 and later amendments to FLSA which provide for liquidated damages in a court action illustrate the intent behind the liquidated damages provision. Prior to the Portal-to-Portal Act, liquidated damages were a requirement outside of any court action. See, e.g., D.A. Schulte, Inc., v. Gangi, 328 U.S. 108, 114-116 (1946) (explaining that Congress had made liquidated damages mandatory); Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 711-712 (1945) (explaining that liability for liquidated damages is not conditioned on default on minimum wages at the time suit is begun). A primary purpose of the Portal-to-Portal Act, however, was to overturn the prevailing case law regarding liquidated damages. That purpose, as codified at 29 U.S.C. § 251 was:

> The Congress finds that the Fair Labor Standards Act . . . has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, . . . (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay.

See also Ex. 36 (Legislative history of Portal-to-Portal Act), A393 (discussing the disfavored result in Brooklyn Savings Bank as part of "the problem"). Further, a primary purpose of later

FLSA amendments was to encourage "voluntary restitution" by employers. See S. Rep. 81-640, reprinted in 1949 U.S.C.C.A.N. 2241, 2249. Pursuant to the these amendments, employers who participated in voluntary restitution were only liable for the amount of the back wages due, and not for liquidated damages in addition to back wages. Id. Similarly, a Federal employer who has paid its employees their back overtime wages plus Back Pay Act interest, should not also be liable to those employees for liquidated damages.[9] The cases cited by the plaintiffs are inapposite. Pl. Mot. 20-21. As discussed above, Schulte is prior to the pertinent amendments; while Hohnke v. United States, 69 Fed. Cl. 170, 176 (2005), prohibits a prospective waiver of liquidated damages where the pay claim has not yet accrued. The plaintiffs (with the possible exception of Moreno) received back overtime wages and Back Pay Act interest and were made whole prior to filing suit. They should not be permitted to obtain an additional windfall payment under the guise of "liquidated damages."

Further, as established above, DHS (and OPM) proceeded with appropriate caution when it began to appear that earlier determinations had been incorrect. The plaintiffs fault "the Defendant" for allegedly "withholding" overtime pay and "misrepresenting" that overtime pay

---

[9] Not only is this result clearly dictated by case law, but it is consistent with the policy behind the FLSA. A major purpose of the FLSA is to assure that employees are assured fair and living wages and that they receive proper overtime pay for all work performed by them. Overnight Motor Transportation v. Missel, 316 US 572 (1942); Walling v. Harnischfeger Corp., 325 U.S. 427 (1945) ("The purpose of the Fair Labor Standards Act was to insure to every worker to whom it applies a minimum hourly wage and a fifty percent higher wage for his overtime hours.") Further, the purpose of the amendments which created the FLSA's current form, were to encourage "voluntary restitution short of litigation." S. Rep. 81-640, reprinted in 1949 U.S.C.C.A.N. 2241, 2249. To order liquidated damages even where an employer has made the decision to pay back wages and where an employer has begun paying back wages creates a perverse incentive for employers to avoid rectifying pay errors.

was not owed after "internally acknowledging" that it was. As established above, these claims are not accurate. In any event, the actions taken by the former INS and DHS upon learning of the new guidance evidences their good faith and that their belief that overtime pay was not owed was on reasonable grounds. They properly chose not to compound a problem by rushing to new decisions without receiving well-considered and thoroughly-vetted new guidance. This certainly does not warrant liquidated damages.

## IV. The Proper Focus Of The Court's Inquiry Is Employing Agency's Determination That FLSA Overtime Was Not Owed

### A. FLSA Requires That This Court Examine The Actions Of The Employing Agency

Finding it difficult to show that the INS acted willfully, that the INS did not act in good faith or based upon reasonable grounds, or that the INS made fraudulent misrepresentations, the plaintiffs resort to characterizing the entire United States Government as the focus of the inquiry for the liquidated damages question, the statute of limitations question, and the equitable tolling question.[10] This blunt instrument, however, intended to force the evidence in the record into the requirements for willfulness or "bad faith", is simply not up to the task.

The FLSA statute, applicable regulations, and controlling case law all dictate that the focus of the inquiry in a FLSA case is the employing agency, not the United States Government as an undifferentiated whole. The FLSA statute itself explicitly contemplates that a Federal

[10] Because this means of describing the case is so false, the plaintiffs are unable to maintain it consistently. For example, when the plaintiffs describe the determination of other Federal agencies to pay overtime to FLETC trainees, they lapse into referring to these agencies as "other Federal agencies" rather than "Defendant." Pl. Mot. 9. We note also that the plaintiffs originally brought suit against the INS, not the entire United States Government. Exs. 25 (Docket, Moreno v. United States, D.D.C. No. 04-899), 26 (Moreno Docket, Fed. Cl.).

agency will be an "employer" for purposes of the requirements of the law. 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency.' (emphasis added)). 29 U.S.C. § 203(x) (defining "public agency" to include "any agency of the United States"). Similarly, the applicable regulations promulgated by OPM and cited numerous times by the plaintiffs, all refer to the employing agency as the FLSA employer. 5 C.F.R. § 551.423(b) ("Directed to participate means that the training is required by the agency . . . ." (emphasis added)); 5 C.F.R. § 551.421 ("[T]he head of an agency is required to establish work schedules for his or her employees." (emphasis added)); 5 C.F.R. § 551.102(a) ("OPM is the administrator of the provisions of the Act with respect to any person employed by an agency . . . ." (emphasis added)); 5 C.F.R. § 551.104 ("Employ means to engage a person in an activity that is for the benefit of an agency, including any hours of work that are suffered or permitted." (emphasis added)); 5 C.F.R. § 551.104 ("Agency means any instrumentality of the United States Government, or any constituent element thereof acting directly or indirectly as an employer . . ." (emphasis added)).

Furthermore, the case law addressing FLSA claims in the Federal context focuses on the acts, omissions, good faith, willfulness, and reasoning of the employing agency. See, e.g., Adams, 350 F.3d at 1227; Doyle v. United States, 931 F.2d at1550; Bull, 68 Fed. Cl. 275; Angelo, 57 Fed. Cl. at 109.

Even applying the joint employer doctrine from the private sector yields the same result. Under that doctrine, a court must examine the "economic reality" of the relationship between the employee and the putative employer to determine if an employment relationship exists for purposes of FLSA. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961); Zheng v.

Liberty Apparel Co., 355 F.3d 61, 67 (2d Cir. 2003). Courts typically look at four factors to determine that "economic reality"—whether the putative employer:

> (1) had the power to hire and fire the employees,
> (2) supervised and controlled employee work schedules or conditions of employment,
> (3) determined the rate and method of payment, and
> (4) maintained employment records.

None of the above is true with respect to OPM or FLETC, the other two agencies which the plaintiffs seek to hold responsible.[11] INS alone performed this role with respect to the plaintiffs. INS is the employer, and the focus of the FLSA inquiry must, therefore, be on INS.

The particular facts of this case also militate against a broad definition of employer. As even the plaintiffs' recitation of facts demonstrates, each Federal agency sending trainees to FLETC, as well as OPM, acted independently in determining whether overtime was owed and in determining whether to pay overtime. Pl. Mot. 6. As the plaintiffs are quick to note, some agencies determined that overtime was owed and paid it, despite the contrary determination by

[11] With respect to determining rates of pay, OPM does not even perform this role. It merely implements the rates of pay determined by Congress. 5 U.S.C. § 1103(a)(5)(A) describes the functions performed by the Director of OPM to include "executing, administering, and enforcing the civil service rules and regulations of the President and the Office and the laws governing the civil service . . . ." 5 U.S.C. § 5301 then describes the policy of Congress with respect to fixing pay of Federal employees. 5 U.S.C. § 5302 defines the "statutory pay system" for General Service (GS) employees and others. 5 U.S.C. § 5303 describes the annual pay adjustment process for each statutory pay system and the President's authority to adjust pay of each statutory pay system. Similarly, 5 U.S.C. § 5304(d)(2) describes the President's role in the locality pay program, 5 U.S.C. § 5304a describes the President's authority to fix an alternative level of comparability pay, and 5 U.S.C. § 5332 describes the GS schedule as the schedule of annual rates of basic pay, which are adjusted in accordance with 5 U.S.C. § 5303.

Pursuant to 5 U.S.C. §5304(i) (for locality pay) and 5 U.S.C. § 5338 (for GS rates of basic pay), OPM merely promulgates regulations to administer the statutory provisions. Ultimately, it is INS which determined how the plaintiffs would be classified for pay purposes, effectively determining their rates of pay.

INS, OPM, and other agencies. Pl. Mot. 6; Pl. F. ¶ 46. Under these circumstances, to treat the U.S. Government as a whole as the employer would be inappropriate and lead to confusion when applying the analysis required to determine the issues presented in this case. Further, it is particularly inappropriate to treat OPM as the employer where there is no claim that the OPM regulations at issue are invalid. It is possible that a plaintiff may bring a FLSA claim on the basis of invalid OPM regulations, in which instance it is conceivable that OPM would be the focus of the inquiry. Where this is not the case, however, treating OPM as employer is not appropriate.[12] Def. F. ¶ 8. It appears that the plaintiffs seek to impute to the entire U.S. Government any information received or any conclusion reached by any individual within the Government. This is absurd, and certainly contrary to the dictates of FLSA.

**B. The Employing Agency's Actions After Making The Determination To Pay FLSA Overtime Wages Does Not Justify An Extension Of The Two-Year Statute Of Limitations Or Give Rise To A Liquidated Damages Award**

As established above, the proper focus of the Court's inquiry is the employing agency, INS, not the entire United States Government. Similarly, because the plaintiffs cannot show willfulness on the part of the agency after making the decision to pay retroactive overtime

[12] The absurdity of treating OPM as an employer in this case is revealed vividly when one tries to answer any of the questions presented by the plaintiffs in their motion. To decide liquidated damages, one must determine whether the employer acted in good faith when it failed to pay the employee and whether the employer's failure to pay the employee was based upon reasonable grounds. Yet OPM did not fail to pay the plaintiffs; if anyone did, it was INS. Similarly, to decide the statute of limitations question, one must determine whether the employer acted willfully when he failed to pay the employee; yet OPM is not responsible for paying the plaintiffs. Finally, to obtain equitable tolling, the plaintiffs must show fraudulent misrepresentations by their employer regarding their claims. Yet OPM is not even authorized to handle claims for liquidated damages such as the one before this Court. See 5 C.F.R. §§ 551.702, 551.703 (permitting administrative claims to OPM regarding back pay and making no provision for administrative claims for liquidated damages).

wages, they are not entitled to any extension of the two-year statute of limitations on this basis. Because they are also unable to show willfulness on the part of the agency after it made the decision to pay retroactive overtime wages, the plaintiffs are not entitled to liquidated damages. Doyle, 20 Cl. Ct. at 505-506 (finding that Court may not award liquidated damages where the claim for liquidated damages is premised on mere delay).

The employing agency exercised due diligence in paying the plaintiffs once the decision to pay retroactive overtime wages had been made.[13] Despite this diligence, the payment process took longer than initially anticipated, largely due to circumstances beyond the agency's control. As explained in the declarations of Wayne Coleman and Alethea Smalls, the ICE personnel charged with completing the payment process, several unforeseen events conspired to slow the payment process.

As a preliminary matter, although DHS (ICE's parent agency) was officially created in January 2003, the process was not complete for most of the component agencies (including ICE) until March 1, 2003. During the creation of DHS, former INS pay personnel, as well as pay personnel from other agencies were responsible for handling pay matters for all of ICE, Citizenship and Immigration Services ("CIS", an agency within DHS), and Customs and Border Protection ("CBP", another agency within DHS). Accordingly, the resources that could be dedicated to the retroactive payment process were limited. Def. F. ¶ 49.

Most importantly, the process of making retroactive payments involved several steps: collecting data on trainees, compiling payment lists of trainees, calculating the amount of the

[13] At the time the decision to pay retroactive overtime wages was made, ICE had taken over from the former INS.

payments, and making arrangements for payment through the National Finance Center. Def. F. ¶ 61. Each of these steps was further complicated by the DHS reorganization. Beginning in August 2003, ICE compensation policy staff (including Alethea Smalls) began the first step in the process: collecting, from FLETC, the names of those employees and former employees who attended training between January 1, 2002 and August 24, 2003, and identifying the number of days that the employees attended sessions on a regularly scheduled 6th day of training. Def. F. ¶ 62. Although this implicated over 4,000 employees who had attended FLETC during the time period in question, there was no central training system that tracked employees as they went through training. Def. F. ¶¶ 63-65. Accordingly, to collect the required trainee data, ICE compensation staff were required to find class rosters for each FLETC class. Def. F. ¶ 65. These rosters were not maintained in a central location, and not all were computerized. Id. Rather, some were maintained in the files of individual instructors, some were stored on individual supervisory instructors' computer systems, and some were located in the FLETC training staff central office. Id. This required an extensive search of electronic files and hard copy files. In addition, FLETC training staff were already fully engaged with the process of trying to train more Federal law enforcement officers in a shorter period of time. Def. F. ¶ 66. As a result, it was difficult for FLETC to dedicate resources to the task of collecting trainee data. Id. This meant that over a period of months, on several occasions, ICE staff were told that the trainee data was complete, only to later find that FLETC was still locating additional class roster lists. Id.

Further, locating the employees for the purpose of providing them with the retroactive payments was demanding. Due to the creation of DHS, former INS employees had been

transferred to three different agencies, namely ICE, CBP, and CIS. Def. F. ¶ 67. Some had also retired or left Federal service. For these employees, ICE had to find current mailing addresses. Id.

Like several other Federal agencies, the former INS contracted with the National Finance Center to process payments to its employees. Def. F. ¶ 73. Accordingly, to complete the retroactive payments, ICE was also required to seek assistance from DOJ (as the former parent of the former INS) and establish an agreement for services with the National Finance Center. Def. F. ¶¶ 68-70. On February 3, 2004, ICE made its request for assistance through a memorandum to DOJ. Then followed lengthy negotiations with NFC regarding several unresolved matters, including the cost of the service, the responsibility for the payment calculations, and other matters arising from the DHS reorganization. Def. F. ¶ 71. These negotiations were further complicated by the fact that the ICE/NFC Liaison was not available as a result of the DHS reorganization. Id. The ICE-NFC Agreement was executed in September 2004. Def. F. ¶¶ 72-78.

In the meanwhile, although ICE was not required to seek an additional appropriation to pay overtime wages to the Plaintiffs for their time spent in training at FLETC, coordination of costs also had to be made between the three organizations that were formed from the former INS: CBP, ICE, and CIS. Def. F. ¶ 68. This process consumed additional time because the budget office had not anticipated this task, and had limited resources due to significant turnover in the office. Id.

In addition, on or about August 22, 2004, ICE Human Resources employees including the Compensation Policy Branch, were transferred to U.S. Customs and Border Protection. Def.

F. ¶ 69. This additional transition necessarily placed an additional strain on the resources of the group responsible for processing the retroactive payments. After this, ICE pay personnel were initially required to provide service to CIS and ICE in addition to being responsible for CBP pay issues. Def. F. ¶¶ 76-77. Also during this period, DHS pay personnel were engaged with developing the new DHS pay-for-performance pay system. Def. F. ¶ 71. Ultimately, one member of ICE pay personnel, Alethea Smalls, inherited full responsibility to complete the overtime payment calculations. Payments to the plaintiffs began December 2004, and were complete by June 2005. Def. F. ¶ 79.

This summary of the payment process is not controverted by any of the evidence presented by the plaintiffs. An examination of the agency's efforts to make the retroactive payments in addition to paying interest pursuant to the Back Pay Act, shows that the agency had an honest intention to pay the plaintiffs beginning in August 2003, and it had reasonable grounds for being unable to pay the plaintiffs immediately upon making the decision to pay them. Similarly, the agency was not willful in failing to pay the plaintiffs after August 2003. To the contrary, the reasons why the plaintiffs could not receive payment immediately show that the agency was neither intentional, deliberate, or reckless. Simply put, it would have been virtually impossible to pay 4,000 unnamed employees and former employees at the time the decision was made. Under any reasonable view of the situation, to find 4,000 employees and former employees, determine when they attended FLETC and for how long, negotiate an agreement for the physical payments to be made, and find monies in the budget to cover the cost of back overtime wages and interest pursuant to the Back Pay Act, could have taken years. In this instance, it took less than two years. The plaintiffs should not be permitted to obtain a windfall

from the delays inherent in such a large process, particularly given that they have already received an interest payment to compensate them for any damage suffered as a result of the delay.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court enter summary judgment in its favor and deny the plaintiffs' motion for summary judgment.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

Of Counsel:
ARTHUR RETTINGER
Senior Counsel
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229
Tel: (202) 344-2978
FAX: (202) 344-2950

MELANIE WATSON
Attorney-Advisor
Office of Personnel Management
1900 E Street, NW
Washington, DC 20415
Tel: (202) 606-1700
Fax: (202) 606-0082

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

December 21, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 21st day of December 2007, a copy of the foregoing "DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah