IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ARTURO MORENO, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 05-142C |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | (Judge Firestone) |
| | ) | |
| | ) | |
| Defendant. | | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

In accordance with Rule 56(h)(2) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits the following response to the plaintiffs' "Proposed Findings Of Uncontroverted Fact," dated October 12, 2007.[1]

1. Plaintiffs are a group of current and former U.S. Government employees who trained at the Federal Law Enforcement Training Center (FLETC). Moreno Decl., at ¶¶1-2, Ex. 1; Answer ¶14; Coleman Decl., at ¶¶3, 6-7, Ex. 2.

   Response: Agrees.

2. They were required to train at the FLETC between January 2002 and August 23, 2003. Id., Docket No. 40, Moreno et al v. U.S., 05 Civ. 142C (J. Firestone); Order, Moreno et al

[1]Included within Plaintiff's Proposed Findings of Uncontroverted Fact were several subheadings. As these subheadings do not comprise numbered paragraphs setting forth material facts, we have not reproduced them here or responded to them.

The plaintiffs' Proposed Findings of Uncontroverted Fact will be cited as "Pl. F. ¶ _." The plaintiffs' exhibits will be cited as "Pl. Ex. _." Our Proposed Findings of Uncontroverted Fact will be cited as "Def. F. ¶ _." The exhibits set forth in the Appendix filed herewith will be cited as "Ex. _." Page numbers from the Appendix will be referred to as "A_."

v. U.S., 05 Civ. 142C (J. Firestone)( April 3, 2006).

Response: Agrees.

3. In an effort to put more law enforcement agents in the field, Defendant required Plaintiffs to work six eight-hour days a week for the duration of their training; ten weeks in the case of Plaintiff Moreno. Answer, ¶¶18-19; Arturo Moreno, Jr. letter to OPM Dallas Oversight Division (Feb. 16, 2004)(1isting dates that he worked a sixth day at the FLETC), Ex. 3.

Response: Disagrees. The Immigration and Naturalization Service ("INS") required Plaintiffs to attend training at the Federal Law Enforcement Training Center ("FLETC"). Ex. 1 (Declaration of Wayne Coleman, Dec. 20, 2007), ¶ 7; Ex. 32 (Deposition of Wayne Coleman pursuant to Rule of the Court of Federal Claims 30(b)(6), Nov. 2-3, 2006), 45:13-19. In an effort to put more law enforcement agents in the field, FLETC required trainees to attend six eight-hour days a week for the duration of their training. Ex. 28 (Declaration of Wayne Coleman, Sep. 24, 2004), ¶ 3. Plaintiff Moreno attended ten weeks of training. Pl. Ex. 3.

4. This sixth eight-hour day resulted in Plaintiffs working more than 40 hours in a workweek. Coleman Decl., at ¶3, Ex. 2; Docket No.8, page 3, Defendant's Reply to Plaintiffs Response to Defendants' Motion for Stay or, In The Alternative, for Enlargement of Time To Answer Complaint, Moreno v. Bureau of Citizenship and Immigration Services, et al., 04 Civ. 0899 (U.S. District Court for the District of Columbia)("The government has committed to pay overtime and interest for those

Immigration Inspectors who attended six-day training and were not paid appropriate overtime compensation....Plaintiff, and those similarly situated, will receive all of the overtime pay to which they are entitled."), Ex. 4.

Response: Disagrees. Plaintiffs attended training for more than 40 hours in a week. Ex. 28 (2004 Coleman Decl.), ¶ 3.

5. Defendant admits to requiring Plaintiffs to work overtime during their FLETC training. See Answer ¶14; Coleman Decl., at ¶3, Ex. 2; Docket No. 3-I, at page 2, ¶2, Defendant's Motion For Stay, or In the Alternative of Time To Answer Complaint and Memorandum of Points and Authorities In Support Thereof, Moreno v. Bureau of Citizenship and Immigration Services, et al., 04 Civ. 0899 (U.S. District Court for the District of Columbia, Sept. 27, 2004), ("[T]he undersigned is informed that Defendants are in the process of paying all of the overtime claims at issue in this case.") Ex. 5; DHS Broadcast e-mail (May 6,2003), ("DHS Broadcast) Ex. 6; Office of Personnel Management (OPM) 30(b)(6) Deposition of Wayne A. Coleman ("Coleman Depo."), at 45:11-20, Ex. 7.

Response: Disagrees. The Plaintiffs' employing agency, INS, required Plaintiffs to attend more than 40 hours per week of training. Ex. 28 (2004 Coleman Decl.), ¶ 3.

6. The Fair Labor Standards Act, 29 U.S.C. §201, et seq. ("FLSA"), required Defendant to pay Plaintiffs overtime for the sixth day of training at the FLETC.

Response: Objects and Disagrees. This is a legal conclusion; however, it does not preclude summary judgment in favor of the Government. ICE determined to pay the Plaintiffs overtime wages under the Fair Labor Standards Act

("FLSA") for the sixth eight-hour day of training at the FLETC. 29 U.S.C. § 201, et seq.

7. Defendant admits that Plaintiffs' were non-exempt employees under the FLSA. Bryce Baker e-mail exchange with Vicky Draper (November 18, 2002)("After revising this issue, we would like to modify our response), ("Baker Nov. 18,2002 e-mail"), Ex. 8; Vicki Draper e-mail exchange with Gary Wilson (Dec. 18, 2002)(Re: FLSA and training)("Regrettably, our original determination was incorrect.")("Draper Dec. 12, 2002 e-mail"), Ex. 9; David Hyde e-mail stream to I st-G-WPC (March 20, 2003)(Re: FW:FLSA and training -proposed response to steven cohen)("our staff made a mistake in the original guidance we provided agencies in response to specific questions we received in the fall of 2001 about 6-day training course at the Federal Law Enforcement Training Center (FLETC).") ("David Hyde e-mail"), Ex. 10; Questions and Answers on Time Spent In Trainings As Hours of Work for FLSA Covered Employees, Office of Personnel Management website http://www.opm.gov/oca/pay/HTML/TrainQA.asp,("OPM Q&A website"). Ex.l1.

Response: Agrees.[2]

8. Defendant admits that the FLSA required it to pay Plaintiffs overtime wages for the sixth eight-hour day of training. Coleman Decl., at ¶3, Ex. 2; Draper Dec. 18, 2002 email("We recently revisited this issue after realizing that the term 'regular working hours' is defined in 5 CFR 551.421.

---

[2] The name "Vicki Draper" has been misspelled in the first citation, and the quotation is incorrect. In addition, the website citation is incorrect, and the Office of Personnel Management ("OPM") materials do not support the allegations.

Response: Disagrees. ICE determined to pay the plaintiffs under the FLSA for the sixth eight-hour day of training. Ex. 1 (2007 Coleman Decl.),¶¶ 20-21; Ex. 2 (2007 Smalls Decl.), ¶ 4.

9. When we read the regulations at 5 CFR 551.423(a)(1) in conjunction with the 551.421, it is clear that if the nonexempt employees are scheduled in advance of the administrative workweek to attend a 6-day training class, those regularly scheduled training hours on the 6th day are 'regular working hours' and constitute hours of work for overtime pay purposes."), Ex. 9; OPM Q&A website, Ex. 11; Timothy Haugh, Acting Director, Office of Congressional Relations letter to Honorable Silvestre Reyes, Member, U.S. House of Representatives (Feb. 4, 2004)("We are in the process of compensating employees who attended a 6th day of training...Those employees who attended mandatory basic training during the period of January 2002 through August 2003, will receive a retroactive payment."), Ex. 12.

Response: Objects as this numbered paragraph contains no proposed finding of uncontroverted fact. Furthermore, it appears that the first sentence is intended to be a quotation, yet it is missing an opening quotation mark.

10. In fact, Defendant cannot claim otherwise because regulations it promulgated make clear that the FLSA required the overtime payments. Coleman Decl., at ¶¶3-4, Ex. 2; Baker Nov. 18, 2002 e-mail, Ex. 8; Draper Dec. 18,2002 e-mail, Ex. 9; David Hyde e-mail("our staff made a mistake in the original guidance we provided agencies in response to specific questions we received in the fall of 2001 about 6-day training course at the Federal Law Enforcement Training Center (FLETC)."), Ex. 10; 5 C.F.R §551.421,

551.423; 5 C.F.R. §610.110; §610.111.

Response: Disagrees. The regulations at issue, namely 5 C.F.R. §551.421 and 5 C.F.R. §551.423 were promulgated by OPM. The proper application of these regulations to the factual circumstances of Plaintiffs and other FLETC trainees was not clear to INS, OPM, or other agencies. Ex. 1 (2007 Coleman Dec.), ¶¶ 10-19; Ex. 32 (Coleman Depo.), 53:7-21, 77:13-78:20, 83:20-24; Ex. 30 (Deposition of Vicki L. Draper, Nov. 30, 2006), 116: 12-18; Ex. 7 (Declaration of Brenda Evenski, Department of State); Ex. 8 (Declaration of Felicia J. Probert, Bureau of Land Management); Ex 9 (Declaration of Lester Davis, Office of the Inspector General of the Department of Housing and Urban Development); Ex. 10 (Deborah A. Rigden, United States Department of Agriculture, Forest Service).

11. Even in January 2002, when the 6-day training began, Defendant recognized that 5 C.F.R. §551.423 governed its FLSA obligations to Plaintiffs. Coleman Dep., at 77-78:2, Ex. 7; OPM Q&A website, Ex. 11.

Response: Disagrees. Neither the deposition excerpt nor the website cited support these allegations.

12. Section §551.423(a)(l) states that "[t]ime spent in training, whether or not it is under the purview of Part 410 of this chapter, shall be administered as follows: Time spent in training during regular working hours shall be considered hours of work."

Response: Agrees.

13. Defendant admits that the term "regular working hours" was defined two sections away

in the regulations at 5 C.F.R. §551.421, and that "regular working hours" include regularly scheduled overtime time hours. Coleman Depo., at 99:16-19, Ex. 7.

Response: Agrees.

14. Moreover, Defendant admits that because Plaintiffs 6th day of training was regularly scheduled, the FLSA required overtime wages be paid. Coleman Decl., at ¶¶3-4; Draper Dec. 18 2002 e-mail, Ex. 9.

Response: Agrees. At the time the initial determination was made, however, INS pay personnel interpreted the applicable regulations to preclude payment of FLSA overtime wages for the plaintiffs' sixth day of training. Ex. 1 (2007 Coleman Decl.), ¶ 16.

15. Despite its legal obligation, Defendant did not pay Plaintiffs overtime wages. It based its refusal to pay overtime on a claim that the term "regular working hours" in 5 C.F.R §551.423(a)(3) does not include regularly scheduled overtime hours. Coleman Depo., at 78:12-20, Ex. 7.

Response: Disagrees. The INS did not pay the plaintiffs overtime wages at the time they attended FLETC. Ex. 1 (2007 Coleman Decl.), ¶ 16. The INS has since paid the plaintiffs back overtime wages plus Back Pay Act for the time they spent in training at FLETC. Ex. 2 (2007 Smalls Decl.), ¶¶ 19, 22. At the time the Plaintiffs initially attended FLETC, INS pay personnel interpreted the term "regular working hours" in 5 C.F.R. § 551.423(a)(3) to mean a 40-hour work week. Ex. 1 (2007 Coleman Decl.), ¶ 14; Ex. 32 (Coleman Depo.) 78:12-20.

16. Defendant claims that in 2002 it "understood the regular working hours to mean basic 40-hour work week that most federal employees are required to work." Coleman Depo., 83:17-24, Ex. 7.

Response: Disagrees. In 2002, INS pay personnel "understood the regular working hours to mean basic 40-hour work week that most Federal employees are required to work." Ex. 1 (2007 Coleman Decl.), ¶ 14; Ex. 32 (Coleman Depo.), 83:17-24.

17. Defendant has since acknowledged that this position was contrary to the law. Coleman Depo., 77:15-78:2, Ex. 7.

Response: Disagrees. The INS subsequently interpreted "regular working hours" as defined in 5 C.F.R. § 551.421 as "the days and hours of an employee's regularly scheduled administrative workweek established under part 610 of this chapter," not the 40-hour work week that most Federal employees are required to work. 5 C.F.R. § 551.421. Ex. 1 (2007 Coleman Decl.), ¶ 20.

18. As authority for its interpretation of "regular working hours", Defendant relied on Federal Personnel Manual (FPM) Letter 551-17. Coleman Decl., at ¶2, Ex. 2.

Response: Disagrees. In determining whether Plaintiffs were owed overtime wages for their time spent in training, INS pay personnel consulted the Federal Personnel Manual (FPM) Letter 551-17, as well as consulting applicable regulations, other documents, and relevant experience. Ex. 1 (2007 Coleman Decl.) ¶¶ 10-14; Ex. 32 (Coleman Depo.) 62:10-14.

19. However, FPM Letter 551-17 was rendered obsolete in 1993, eight years before Defendant relied on it. Coleman Depo., at 87:21-88: 17, Ex. 7.

<u>Response</u>: Disagrees. OPM issued a "FPM Sunset Document" December 31, 1993, which abolished the FPM but retained certain sections, including FPM Letter 551-17 as "material that is being retained because it contains process instructions, critical case law, ensures consistency of action throughout Government, or authorizes agency action." Ex. 6 (FPM Sunset Document, Dec. 31, 1993), A21; Pl. Ex. 13.

20. The actual letter Defendant relied upon was marked obsolete across the top. Coleman Dep., at 89:10-11, Ex. 7; FPM Letter 551-17, Ex. 13.

<u>Response</u>: Disagrees. The copy of FPM Letter 551-17 reviewed by INS pay personnel in determining whether Plaintiffs were owed overtime wages for their training at FLETC does contain the word "obsolete" on the first page. It also is labeled "retained until superseded." Pl. Ex. 13; Ex. 1 (2007 Coleman Decl.), ¶ 11; Ex. 32 (Coleman Depo.) 89:10-11.

21. Moreover, FPM Letter 551-17 did not define "regular working hours" or even address the issue. See Coleman Depo., at 89:15-25, Ex. 7; FPM Letter 551-17, Ex. 13; Draper Depo., at 103:17-104:9, Ex. 14.

<u>Response</u>: Disagrees. FPM Letter 551-17 discusses "time spent in training outside regular working hours" and states:

> Agencies are cautioned that the regulations contained in 5 CFR 551.423 and the instructions provide in the attachment to this letter do not apply to time spent in training by employees during overtime hours under title 5. The

> prohibition on the payment of premium pay, including overtime pay, contained in 5 U.S.C. 4109 (a)(1) is applicable in the administration of premium pay under title 5.

Pl. Ex. 13.

22. In contrast to the obsolete FPM Letter, the FLSA regulations that bind Defendant made clear that the regular working hours include regularly scheduled overtime, like Plaintiffs' 6th day of training at the FLETC. Title 5, part 551 of the Code of Federal Regulations govern Defendant's FLSA obligations to its employees. See Sec. 4(f) of the FLSA of 1938, as amended by Pub. L. 93-259, 88 Stat. 55 (29 U.S.C. § 204(f)); 5 C.F.R. § 551.102(a).

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. The FPM Letter at issue was not obsolete. OPM issued a "FPM Sunset Document" December 31, 1993, which abolished the FPM but retained certain sections, including FPM Letter 551-17 as "material that is being retained because it contains process instructions, critical case law, ensures consistency of action throughout Government, or authorizes agency action." Ex. 13 (FPM Sunset Document, Dec. 31, 1993), A21; Pl. Ex. 13. The proper application of Title 5, Part 551 of the Code of Federal Regulations to the factual circumstances of Plaintiffs and other FLETC trainees was not clear to INS, OPM, or other agencies. Ex. 1 (2007 Coleman Dec.), ¶¶ 10-19; Ex. 32 (Coleman Depo.), 53:7-21, 77:13-78:20, 83:20-24; Ex. 30 (Deposition of Vicki L. Draper, Nov. 30,

2006), 116: 12-18; Ex. 7 (Declaration of Brenda Evenski, Department of State); Ex. 8 (Declaration of Felicia J. Probert, Bureau of Land Management); Ex 9 (Declaration of Lester Davis, Office of the Inspector General of the Department of Housing and Urban Development); Ex. 10 (Deborah A. Rigden, United States Department of Agriculture, Forest Service).

23. The regulations require Defendant to pay FLSA overtime for all hours of work over 40 in a workweek. 5 C.F.R. §551.501(a).

Response: Disagrees. Pursuant to 5 C.F.R. § 551.501(a)(5)-(7), as well as other statutes and regulations, Federal employers are not required to pay FLSA overtime for all "hours of work" over 40 hours in a work week.

24. Time spent training during "regular working hours" is hours of work. 5 C.F.R. §551.423(a)(l).

Response: Agrees that 5 C.F.R. §551.423(a)(1) states: "Time spent in training during regular working hours shall be considered hours of work."

25. Section 551.421 defines the term "regular working hours" as "the days and hours of an employee's regularly scheduled administrative workweek established under part 610 of this chapter."

Response: Agrees that 5 C.F.R. § 551.421 states:

> For purposes of this part, "regular working hours" means the days and hours of an employee's regularly scheduled administrative workweek established under part 610 of this chapter.

26. The term "regularly scheduled administrative workweek" is defined in 5 C.F.R. §

610.102 as the "period within an administrative workweek, established in accordance with §610.111, within which the employee is regularly scheduled to work."

Response: Agrees that 5 C.F.R. § 610.102 states:

> Regularly scheduled administrative workweek, for a full-time employee, means the period within an administrative workweek, established in accordance with § 610.111, within which the employee is regularly scheduled to work.

27. Section 610.611 makes clear that a regularly scheduled administrative workweek "consists of the 40-hour basic workweek established in accordance with paragraph (a)(l) of this section, plus the period of regular overtime work, if any, required of each employee." See e.g., Baker Nov. 18, 2002 e-mail. Ex. Bt Coleman Depo. at 98:11-99:21, Ex. 7; OPM 30(b)(6) deposition of Jerome Mikowicz, at 121:19-25, ("Mikowicz Depo.") Ex. 15.

Response: Disagrees.[3] 5 C.F.R. § 610.111 states:

> The head of each agency, with respect to each full-time employee to whom this subpart applies, shall establish by a written agency policy statement:
> . . .
> A regularly scheduled administrative workweek that consists of the 40-hour basic workweek established in accordance with paragraph (a)(1) of this section, plus the period of regular overtime work, if any, required of each employee.

28. Defendant admits that, along with the statute itself, the regulations codified at 5 C.F.R. Part 551 are the primary legal authority for its FLSA obligations. Coleman Depo., at

[3] 5 C.F.R. § 610.611 does not exist. We will assume Plaintiffs intended to refer to 5 C.F.R. § 610.111.

50:2-51:12, Ex. 7; Mikowicz Depo., at 106:15-19, Ex. 15.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. The FLSA obligations of the INS are set forth in the FLSA statute, 29 U.S.C. § 201, et seq., the regulations codified at 5 C.F.R. Part 551, and other applicable regulations.

29. Defendant also admits that those regulations required it to pay Plaintiffs for their 6th eight-hour day of training at the FLETC. Coleman Decl., at ¶4, Ex. 2; Draper Dec. 18, 2002 e-mail (referring to 5 C.F.R. Part 551), Ex. 9.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. ICE, as one of the successors to INS, the plaintiffs' employing agency, determined that the plaintiffs should receive overtime wages for their sixth eight hour day of training at the FLETC. Ex. 1 (2007 Coleman Decl.), ¶ 21; Ex. 2 (2007 Smalls Decl.), ¶ 4; Ex. 32 (Coleman Depo.), 77:13-78:2.

30. Defendant claimed that FPM Letter 551-17 prohibited it from paying overtime for training under 5 C.F.R. §551.423(a)(2), contrary to the clear language of the actual and current regulations.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. INS pay personnel concluded that overtime wages

were not authorized for the time Plaintiffs spent in training at the FLETC. The proper application of 5 C.F.R. § 551.423(a)(2) to the factual circumstances of Plaintiffs and other FLETC trainees was not clear to INS, OPM, or other agencies. Ex. 1 (2007 Coleman Dec.), ¶¶ 10-19; Ex. 32 (Coleman Depo.), 53:7-21, 77:13-78:20, 83:20-24; Ex. 30 (Deposition of Vicki L. Draper, Nov. 30, 2006), 116: 12-18; Ex. 7 (Declaration of Brenda Evenski, Department of State); Ex. 8 (Declaration of Felicia J. Probert, Bureau of Land Management); Ex 9 (Declaration of Lester Davis, Office of the Inspector General of the Department of Housing and Urban Development); Ex. 10 (Deborah A. Rigden, United States Department of Agriculture, Forest Service).

31. Defendant could point to no regulation or authority, other than the obsolete and irrelevant FPM Letter, that supported its position. Coleman Depo., at 89:15-90:5; 106:2-107:23, Ex. 7.

<u>Response</u>: Disagrees. In determining that overtime wages were not authorized for the time Plaintiffs' spent in training at FLETC, INS pay personnel consulted the FLSA statute, applicable regulations, OPM guidance, and their extensive experience. Ex. 1 (2007 Coleman Decl.), ¶¶ 10-19; Def. F. ¶¶ 14-22.

32. Defendant admits that it did not look at these regulations at the time it decided to not pay Plaintiffs overtime. Coleman Depo., at 102:14-17, Ex. 7; Deposition of Lead Compensation Specialist at the Office of Personnel Management, Vicki Draper, at

101:17-23,106:6-17, Ex. 14 ("Draper Depo.").

Response: Disagrees. INS pay personnel did not consult 5 C.F.R. § 551.421 in determining that overtime wages were not authorized for the time Plaintiffs spent in training at FLETC. Ex. 1 (2007 Coleman Decl.), ¶ 14; Ex. 32 (Coleman Depo.), 102:14-17.

33. Defendant just assumed, without even consulting its own regulations, that "regular working hours' was limited to 40 hours. Coleman Depo., at 93:22-94:4, Ex. 7.

Response: Disagrees. INS pay personnel, in determining whether plaintiffs were owed overtime for their time spent in training at FLETC, determined that the term "regular working hours," consistent with their experience and Government practice, referred to a 40 hour work week. Ex. 1 (2007 Coleman Decl.), ¶ 14; Ex. 32 (Coleman Depo.), 78:12-20.

34. Defendant is responsible for promulgating the regulations governing its FLSA obligations. 29 U.S.C. §204(f); see 5 C.F.R. Part 551; Mikowicz Depo., at 20:11-14, Ex. 15.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. OPM is responsible for promulgating the regulations governing the FLSA obligations of Federal agencies to their employees. 29 U.S.C. § 204(f); 5 C.F.R. § 551.102(a).

35. Defendant promulgated 5 C.F.R. §551.423 in 1980.45 F.R. 49582 (July 25, 1980). It promulgated the regulations defining the term "regular working hours" in the same year.

45 F.R. 85664 (Dec. 30, 1980); 5 C.F.R. §551.421.

Response: Disagrees. The OPM regulations published on July 25, 1980, were proposed regulations and thus were not in effect. 45 Fed. Reg. 49,582 (Jul. 25, 1980). OPM published final regulations on December 30, 1980, and those regulations included 5 C.F.R. § 551.421 and 5 C.F.R. § 551.423. 45 Fed. Reg. 85,659 (Dec. 30, 1980). In the final regulations, OPM defined "regular working hours" as the "hours and days during which an employee is normally scheduled to be on duty." 45 Fed. Reg. 85,664. OPM revised the definition of "regular working hours" in final regulations published on August 15, 1983. 48 Fed. Reg. 36,803. The 1983 revision first connected the definition to the employee's regularly scheduled administrative workweek established under 5 C.F.R. part 610. 45 Fed. Reg. 36,805-806.

36. In promulgating 5 C.F.R. §551.423, Defendant specifically addressed the issue of whether regularly scheduled training constituted hours of work for FLSA purposes.

Response: Objects. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. Further, this proposed finding of fact includes no citation to any document, affidavit, or declaration supporting it.

37. The promulgation process involved an extensive comment period. Dwight Brown comments on responses to regulations proposed in 45 Fed. Reg. 49580, ("Brown comments") Ex. 16.

Response: Disagrees. A 60-day comment period was provided in connection with the proposed regulations published on July 25, 1980. 45 Fed. Reg. 49,580.

38. Defendant's notes from that process show that Defendant received extensive comments requesting that it define the term "regular working hours" to avoid ambiguity. Mikowicz Depo., at 219:24-220:12, Ex. 14; Brown comments, at Bates No. MOR-3693 (dated July 13, 1978)(letter from D.E.Lemon, Director of Personnel Management from the U.S. Department of Labor stating that "[w]e strongly urge than an attempt be made to redefine the 'workday' of this regulation so that it does relate directly both to the 'workday' of Part 610 and to 'an employee's regular working hours' as used elsewhere in the draft."), at Bates No. MOR-3694 (July 26, 1978 memorandum from John J. Laffery, Director New York Region U.S. Civil Service Commission stating that "[tjhe term 'regular working hours,' as it is used in Section 551.421,551.422,551.423,551.425, is not defined. A clear definition is necessary because the regulations covering time spent in ...training... appear to be inapplicable to intermittent employees, who have no 'regular working hours,'[.]"), Ex. 16; Bryce Baker e-mail to Jo Ann Perrini, Vicki Draper, Don Winstead regarding "Regular working hours (March 24, 2003)("1 have found in the old FLSA history files that OPM (Dwight Brown) interpreted the term 'regular working hours' to include regularly scheduled overtime pay as far back as 1976."), Ex. 17; Richard M. Brennan e-mail exchange with Bryce Baker regarding "Regular working hours" (March 26, 2003)("From our files I know that OPM consulted with DOL staff extensively back then."), Ex. 30.

Response: Disagrees. OPM received comments regarding the proposed regulations during the comment period regarding the definition of "regular working hours." Pl. Ex. 16.

39. Even FLETC personnel commented on the proposed regulation raising a concern about the financial impact from training "outside the normal eight hour training day". Brown comments, at Bates No. MOR-3701, Ex. 16.

Response: Disagrees. FLETC submitted comments regarding the impact of training "outside the normal eight hour training day", including the impact on the quality, amount, and cost of training. The FLETC comments did not address the issue of a sixth day of scheduled training. Pl. Ex. 16, at MOR-3701.

40. After the comment period, Defendant promulgated and published final regulations that made clear Defendant must pay FLSA overtime for regularly scheduled training that resulted in overtime hours. 45 F.R. 85664 (Dec. 30, 1980).

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. After the comment period, OPM published final regulations on December 30, 1980, and that those regulations included §§ 551.421 and 551.423. 45 Fed. Reg. 85,659. The proper application of these regulations to the factual circumstances of Plaintiffs and other FLETC trainees was not clear to INS, OPM, or other agencies. Ex. 1 (2007 Coleman Dec.), ¶¶ 10-19; Ex. 32 (Coleman Depo.), 53:7-21, 77:13-

78:20, 83:20-24; Ex. 30 (Deposition of Vicki L. Draper, Nov. 30, 2006), 116: 12-18; Ex. 7 (Declaration of Brenda Evenski, Department of State); Ex. 8 (Declaration of Felicia J. Probert, Bureau of Land Management); Ex 9 (Declaration of Lester Davis, Office of the Inspector General of the Department of Housing and Urban Development); Ex. 10 (Deborah A. Rigden, United States Department of Agriculture, Forest Service).

41. The final regulations defined time spent training during regular working hours as hours of work. 45 F.R. 85664 codified in 5 C.F.R.§551.423(a).

Response: Agrees that 5 C.F.R. §551.423(a) states: "Time spent in training during regular working hours shall be considered hours of work."

42. Hours of work triggered FLSA liability if they exceeded 40 in a week. 5 C.F.R. §551.501(a).

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. Pursuant to 5 C.F.R. § 551.501(a)(5)-(7), as well as other statutes and regulations, employing agencies are not required to pay FLSA overtime for all "hours of work" over 40 hours in a work week.

43. Defendant defined "regular working hours" as "the hours and days during which an employee is normally scheduled to be on duty." 45 F.R. 85664 (Dec. 30 1980)(modifying the definition in response to the comments) codified in 5 C.F.R. §551.421.

Response: Agrees that 5 C.F.R. §551.421, promulgated by OPM, states:

> For purposes of this part, "regular working hours" means the days and hours of an employee's regularly scheduled administrative

workweek established under part 610 of this chapter.

44. Defendant further clarified the definition of "regular working hours" in an additional amendment, making clear that regular working hours include regularly scheduled overtime. See 48 F.R. 36806 (Aug. 15, 1983).

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. The amendment promulgated by OPM did not expressly mention regularly scheduled overtime; rather, it made reference to the "regularly scheduled administrative workweek" in part 610. 48 Fed. Reg. 36,806 (Aug. 15, 1983). Prior to January 28, 1983, the term "regularly scheduled administrative workweek" was defined to include only those hours "required . . . regularly." Ex. 33 (1983 version of 5 C.F.R. § 610.102, defining "regularly scheduled administrative workweek"). On January 28, 1983, OPM published a regulation which defined "regularly scheduled administrative workweek" to mean "the period within an administrative workweek, established in accordance with § 610.111 of this chapter, within which the employee is regularly scheduled to work." 48 Fed. Reg. 3,934 (Jan. 28, 1983).

45. These regulations establishing Defendant's legal obligation to pay overtime for regularly scheduled training are clear and had been in effect for nearly two decades before Defendant began requiring a 6th day of training at the FLETC. 45 F.R. 85664.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact

is a legal conclusion, but it does not preclude summary judgment in favor of the Government. The regulations at issue, namely 5 C.F.R. § 551.423 and 5 C.F.R. § 551.421, governing the obligation of Federal agencies to pay overtime to their employees have been in effect since at least 1983.

46. Indeed, some agencies disregarded Defendant's position and followed the law. George H. Bohlinger, III, Executive Associate Commissioner, Office of Management, U.S. Department of Justice, memorandum to Robert F. Diegelman, Acting Assistant Attorney General For Administration (April 24, 2002)(Subject: Overtime on the Sixth Day of Training, "request to seek an exception from the U.S. Office of Personnel Management (OPM) to the regulatory prohibition against paying overtime to employees attending basic training at the Immigration Officer Academy (lOA).")("We have been able to confirm that three organizations are paying basic trainees overtime. The agencies are the National Park Service Park Police, the Capitol Police, and the U.S. Mint paid their agents training at the FLETC overtime for the 6th day of training."), ("Bohlinger memorandum") Ex. 18.

Response: Disagrees. The documents cited therein do not support the allegation that "some agencies disregarded Defendant's position." Some Federal agencies did determine that FLETC trainees were owed overtime under FLSA; others determined that FLETC trainees were not owed overtime under FLSA. See Ex. 7 (Declaration of Brenda Evenski, Department of State); Ex. 8 (Declaration of Felicia J. Probert, Bureau of Land Management); Ex. 9 (Declaration of Lester Davis, Office of the Inspector

General of the Department of Housing and Urban Development); Ex. 10 (Deborah A. Rigden, United States Department of Agriculture, Forest Service).

47. Defendant does not contest that the FLSA required it to pay Plaintiffs overtime for the sixth day of training at the FLETC. Coleman Decl., at ¶7, Ex. 2.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. ICE, one of the successors to the plaintiffs' employing agency, subsequently determined to pay plaintiffs overtime for the sixth day of training at the FLETC pursuant to the FLSA. Ex. 1 (2007 Coleman Decl.), ¶¶ 20-21; Ex. 2 (2007 Smalls Decl.), ¶ 4; Ex. 32 (Coleman Depo.), 77:13-78:2.

48. Defendant does not deny that the regulations it promulgated were in effect in January 2002. Coleman Depo., at 97:2-98:3,102:11-13, Ex. 7.

Response: Disagrees. The regulations at issue, namely 5 C.F.R. §551.423 and 5 C.F.R. §551.421, were promulgated by OPM. These regulations were in effect in January 2002. 5 C.F.R. §§551.421, 551.423.

49. Defendant does not deny that those regulations, along with the statute itself, govern its FLSA responsibility. Coleman Decl., at ¶¶4, 7, Ex. 2; Coleman Depo., at 102:1417, Ex. 7; Draper Depo., at 24:3-18, Ex. 14.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor

of the Government. The regulations at issue, namely 5 C.F.R. §551.423 and 5 C.F.R. §551.421, were promulgated by OPM. These regulations, as well as the FLSA statute, 29 U.S.C. §201, et seq., and other applicable regulations govern the FLSA obligations of Federal agencies to their employees.

50. Defendant admits that Plaintiffs were entitled to overtime pay for the sixth eight hour day at the time they worked the overtime hours. Coleman Decl., at ¶4, Ex. 2; Mikowicz Depo., at 63:1-9, Ex. 15.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. ICE, one of the successors to INS, the plaintiffs' employing agency, determined that FLSA did authorize payment of overtime wages to the plaintiffs for the sixth eight-hour day of training at the time they attended the training. Ex. 1 (2007 Coleman Decl.), ¶ 20-21; Ex. 2 (2007 Smalls Decl.), ¶ 4; Ex. 32 (Coleman Depo.), 77:13-78:2.

51. Defendant simply did not look at the regulatory definition of the term "regular working hours" in 5 C.F.R. §551.423 Coleman Depo., at 102:14-17, Ex. 7; Draper Depo., at 101:21-23, Ex. 14.

Response: Disagrees. INS pay personnel did not consult the definition contained in 5 C.F.R. § 551.421, but considered relevant statutes, regulations, OPM guidance, and their extensive experience in interpreting the meaning of "regular working hours" and determining whether the Plaintiffs were

owed overtime for their training at FLETC. Ex. 1 (2007 Coleman Decl.), ¶¶ 10-19; Def. F. ¶¶ 14-22.

52. In July 2002, in response to an effort to pay overtime wages for the 6th day of training, the Defendant laid out its position against paying overtime in a memo. Robert F. Diegelman, Acting Assistant Attorney General for Administration, U.S. Department of Justice memorandum to George H. Bohlinger, III, Executive Associate Commissioner, Office of Management, Immigration and Naturalization Service (July 2, 2002)(Subject: Overtime Compensation for the Sixth Day of Training), ("Diegelman memorandum"), Ex. 19.

Response: Disagrees. Given its understanding that governing statutes and regulations did not permit INS to pay Plaintiffs FLSA overtime wages for their time spent in training at FLETC, INS sought alternative means to compensate Plaintiffs for their Saturdays spent in training. In particular, INS sought an exception from OPM to the regulation prohibiting payment of overtime wages where not authorized by FLSA (5 C.F.R. §410.402). Pl. Ex. 18. DOJ, the parent agency to INS, ultimately decided not to seek this exception, and explained this in the referenced memorandum. Pl. Ex. 19. The memorandum does not discuss FLSA overtime, only the potential overtime pursuant to the 5 C.F.R. § 410.402 exception. Pl. Ex. 19.

53. Defendant stated that it did not want to pay the overtime wages for the training because of the negative impact that it would have on its agencies' budgets. Id. Indeed, it did not want any employees receiving overtime for the 6th day of FLETC training because that

might require having to pay all employees who trained there for 6 days a week. Id.

Response: Disagrees. Given its understanding that governing statutes and regulations did not permit INS to pay Plaintiffs FLSA overtime wages for their time spent in training at FLETC, INS sought alternative means to compensate Plaintiffs for their Saturdays spent in training. In particular, INS sought an exception from OPM to the regulation prohibiting payment of overtime wages where not authorized by FLSA (5 C.F.R. §410.402). Pl. Ex. 18. DOJ, the parent agency to INS, ultimately decided not to seek this exception, and explained this in the referenced memorandum. Pl. Ex. 19. In a memorandum explaining that determination, the Acting Assistant Attorney General for Administration in the United States Department of Justice (the parent agency to INS) explained that this determination was due in part to budgetary constraints. Pl. Ex. 19. The memorandum does not discuss FLSA overtime, only the potential overtime pursuant to the 5 C.F.R. § 410.402 exception. Pl. Ex. 19.

54. By September 2002, Defendant positively knew that the FLSA obligated it to pay Plaintiffs overtime for the 6th day of training. Mikowicz Depo., at 138:1-11, Ex. 15.

Response: Disagrees. OPM has no obligation or authority to pay Plaintiffs or any other employees of any other Federal agency, as its mandate is to provide guidance to other Federal agencies with respect to pay matters. Ex. 5 (Declaration of Jerome D. Mikowicz, Dec. 19, 2007), ¶ 3; 5 U.S.C. § 1103(a)(5)(A). In the fall of 2002, OPM personnel determined that prior

OPM guidance regarding the payment of overtime wages for time spent in training at FLETC had been incorrect. Ex. 4 (Declaration of Bryce Baker, Dec. 19, 2007), ¶ 3, 6.

55. By November 18,2002, Defendant internally acknowledged the legal obligation in writing. Baker Nov. 18,2002 e-mail ("After revising this issue, we would like to modify our response), Ex. 8.

Response: Disagrees. OPM has no obligation or authority to pay Plaintiffs or any other employees of any other Federal agency. On November 18, 2002, Bryce Baker, then Senior Advisor to the Assistant Director for Compensation Administration, and Vicki Draper, Team Lead in the Pay and Leave Administration Group, discussed via email a proposed draft email to HUD pay personnel regarding the FLETC overtime issue. The proposed draft states: "After revisiting this issue, we would like to modify our response." Pl. Ex. 8, at MOR-191.

56. Throughout the remainder of 2002 and the first half of 2003, Defendant internally reiterated this position many times. See, e.g., Draper Dec. 18,2002 e-mail, Ex. 9; David Hyde e-mail ("our staff made a mistake in the original guidance we provided agencies in response to specific questions we received in the fall of 2001 about 6-day training course at the Federal Law Enforcement Training Center (FLETC)."), Ex. 10.

Response: Disagrees. OPM has no obligation or authority to pay Plaintiffs or any other employees of any other Federal agency. In late 2002 and early 2003, OPM personnel discussed the matter internally and with other Federal

agencies. Ex. 4 (Baker Decl.), ¶ 7-8; Ex. 34 (Deposition of Jerome D. Mikowicz, Jan. 11, 2007), 193:11-198:19; Pl. Exs. 9-10.

57. Even after internally acknowledging that the regulations clearly required it to pay Plaintiffs overtime, Defendant continued to illegally withhold the overtime pay and continued to misrepresent to the Plaintiffs that they were not due overtime wages. It was not until nearly a year later that Defendant formally informed Plaintiffs that they would receive FLSA overtime. And it took almost two more years for Plaintiffs to get paid. Smalls Decl., at ¶¶17, 19, Ex. 19; Randy Lasar e-mail exchange with Alethea Smalls (March 7,2005) ("Any new word on when we will be paid"; response "I don't know exactly when NFC will be able to do the payments."), ("Lasar e-mail") Ex. 21; Robyn Brown e-mail exchange with Alethea Smalls and Josie Salazar (June 6, 2005) ("I anticipate that payments will take about a couple of months to process. Your name was verified by FLETC and will now be sent to NFC for payment. I will send an email to everyone once I have a definite date. Thanks for your patience."), ("Brown e-mail") Ex. 22.

Response: Disagrees. This is primarily not a proposed finding of uncontroverted fact, but legal argumentation regarding the Defendant's alleged "illegal" "withhold[ing]" of overtime and Defendant's alleged "misrepresentations." Department of Homeland Security ("DHS") pay personnel (who had taken over the personnel functions for the former INS) informed Plaintiffs on May 6, 2003, that they would receive overtime wages for their time spent in training at FLETC. Pl. Ex. 6. Immigration

and Customs Enforcement ("ICE") began the process of payment in August 2003. Ex. 2 (2007 Smalls Decl.), ¶ 6. The vast majority of retroactive payments were made to the employees on December 7, 2004, and were completed by June, 2005, with the possible exception of persons who could not be located. Ex. 2 (2007 Smalls Decl.), ¶ 19.

58. While it took two years to pay many Plaintiffs the back wages, Defendant stopped paying any trainees who did not make a claim upon it within a two-year statute of limitations. In a March 2005 e-mail, Wayne Coleman, Defendant's 30(b)(6) witness explained: "We expect to continue taking claims from legacy INS employees until 30 August 2005, two years after the date on which we received authorization from DHS to pay overtime for those attending basic training on a 6th regularly schedule workday during a training week. This coincides with the two years provided in the FLSA for filing a claim when willful violation is not involved." Coleman e-mail exchange with Bill Kraus (March 3, 2005), Ex. 23; see also Alethea Smalls e-mail exchange with John Stanley (April 25, 2006)("If your name is not on the roster however, we will not be able to process a payment for you as the statute of limitations has expired for an FLSA claim."), ("Stanley e-mail") Ex. 24.

<u>Response</u>: Disagrees.[4] ICE paid all of the Plaintiffs, including some who did not make a claim within two years. Ex. 2 (2007 Smalls Decl.), ¶¶ 19, 22.

59. Defendant testified that the only thing preventing it from paying Plaintiffs overtime was

---

[4]Moreover, although Wayne Coleman was a 30(b)(6) witness, the email discussed cannot be attributed to the INS/DHS as a statement of the agency as the statement was made outside of the deposition.

the authority to do so. Coleman Depo., at 95:7-96:12, Ex. 7.

Response: Disagrees. The testimony cited does not support the allegation.

60. If it had looked at 5 C.F.R. §551.421, it could have corrected its mistake and made the overtime payments on a current basis. Id.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. Further, the testimony cited does not support the allegation.

61. The funds eventually used to pay the overtime came out of existing budgets. Coleman Depo., at 306:21-23, Ex. 7.

Response: Agrees that ICE was not required to seek an additional appropriation when it paid overtime wages to the Plaintiffs for their time spent in training at FLETC. Ex. 18 (ICE-NFC Reimbursable Agreement), A233.

62. Even after acknowledging that the regulations clearly required it to pay Plaintiffs overtime in November 2002, Defendant persisted in its illegal practices even though the funds were available to pay the overtime. Bohlinger memorandum ("The estimated $3.2 million cost of the overtime is available within existing INS resources ... [T]he Office of Budget believes that the added cost of paying overtime to trainees for the 6th day could be absorbed within existing resources."), Ex. 18.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. ICE was not required to seek an additional

appropriation when it paid overtime wages to the Plaintiffs for their time spent in training at FLETC. Ex. 18 (ICE-NFC Reimbursable Agreement), A233. The regulations at issue, namely 5 C.F.R. § 551.423 and 5 C.F.R. § 551.421, were promulgated by OPM. The proper application of these regulations to the factual circumstances of Plaintiffs and other FLETC trainees was not clear to INS, OPM, or other agencies. Ex. 1 (2007 Coleman Dec.), ¶¶ 10-19; Ex. 32 (Coleman Depo.), 53:7-21, 77:13-78:20, 83:20-24; Ex. 30 (Deposition of Vicki L. Draper, Nov. 30, 2006), 116: 12-18; Ex. 7 (Declaration of Brenda Evenski, Department of State); Ex. 8 (Declaration of Felicia J. Probert, Bureau of Land Management); Ex 9 (Declaration of Lester Davis, Office of the Inspector General of the Department of Housing and Urban Development); Ex. 10 (Deborah A. Rigden, United States Department of Agriculture, Forest Service).

63. Defendant knew that Plaintiffs were entitled to FLSA overtime pay for the sixth day of training at the FLETC when they began the 6-day training schedule.

Response: Disagrees. INS pay personnel did not "know" that Plaintiffs were entitled to FLSA overtime pay for the sixth day of training at the FLETC when FLETC instituted the six-day training schedule. Ex. 1 (2007 Coleman Decl.), ¶¶ 10-19; Ex. 32 (Coleman Depo.), 53:7-21. Moreover, this statement is inconsistent with known evidence as reflected in "Defendant's Proposed Finding of Uncontroverted Facts" filed today.

64. Even though employees questioned why they were not paid overtime for the sixth day of

work at the FLETC, Defendant continued to maintain the position that they were not entitled to overtime because the law prohibited payment. Coleman Depo., at 126:3-127:16, Ex. 7.

Response: Agrees that employees inquired of INS pay personnel regarding overtime wages for their time spent in training at FLETC. Pl. Ex. 6. Agrees that INS initially determined that it was not permitted to pay overtime wages to the Plaintiffs for their time spent in training at FLETC pursuant to applicable statutes and regulations. Ex. 1 (2007 Coleman Decl.), ¶ 19; Ex. 32 (Coleman Depo.), 53:7-21.

65. Months before November 2002, Defendant had actual knowledge that its initial position was directly contrary to the law, and that its own regulations clearly obligated it to pay overtime for the sixth day of training. Coleman Decl., ¶4, Ex. 2; Coleman Depo., at 98:4-100:19, Ex. 7; Baker Nov. 18,2002 e-mail, Ex. 8; Draper Dec. 18,2002 e-mail. Ex.9;OPMQ&Awebsite.Ex.1I.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. INS did not have "actual knowledge" that 5 § C.F.R. §551.423 obligated INS to pay Plaintiffs overtime wages for their time spent in training at FLETC. The regulations at issue, namely 5 C.F.R. §551.421 and 5 C.F.R. §551.423 were promulgated by OPM. The proper application of these regulations to the factual circumstances of Plaintiffs and other FLETC trainees was not clear to INS, OPM, or other agencies.

Ex. 1 (2007 Coleman Dec.), ¶¶ 10-19; Ex. 32 (Coleman Depo.), 53:7-21, 77:13-78:20, 83:20-24; Ex. 30 (Deposition of Vicki L. Draper, Nov. 30, 2006), 116: 12-18; Ex. 7 (Declaration of Brenda Evenski, Department of State); Ex. 8 (Declaration of Felicia J. Probert, Bureau of Land Management); Ex 9 (Declaration of Lester Davis, Office of the Inspector General of the Department of Housing and Urban Development); Ex. 10 (Deborah A. Rigden, United States Department of Agriculture, Forest Service). Moreover, this statement is inconsistent with known evidence as reflected in "Defendant's Proposed Finding of Uncontroverted Facts" filed today.

66. Defendant continued its practice of not paying overtime to trainees as the FLETC-a practice it knew was contrary to the law.

Response: Objects to this statement because it includes no citation to any document, affidavit, or declaration supporting it. Moreover, it is inconsistent with known evidence as reflected in "Defendant's Proposed Finding of Uncontroverted Facts" filed today. INS did not pay overtime wages to FLETC trainees as it did not understand that it was required to do so. Ex. 1 (2007 Coleman Decl.), ¶¶ 10-19; Ex. 32 (Coleman Depo.), 53:7-21. The regulations at issue, namely 5 C.F.R. §551.421 and 5 C.F.R. §551.423 were promulgated by OPM. The proper application of these regulations to the factual circumstances of Plaintiffs and other FLETC trainees was not clear to INS, OPM, or other agencies. Ex. 1 (2007 Coleman Dec.), ¶¶ 10-

19; Ex. 32 (Coleman Depo.), 53:7-21, 77:13-78:20, 83:20-24; Ex. 30 (Deposition of Vicki L. Draper, Nov. 30, 2006), 116: 12-18; Ex. 7 (Declaration of Brenda Evenski, Department of State); Ex. 8 (Declaration of Felicia J. Probert, Bureau of Land Management); Ex 9 (Declaration of Lester Davis, Office of the Inspector General of the Department of Housing and Urban Development); Ex. 10 (Deborah A. Rigden, United States Department of Agriculture, Forest Service).

67. Finally, after receiving "many inquiries from employees", Defendant publicly acknowledged that it owed Plaintiffs FLSA overtime for the sixth eight-hour day of training. DHS Broadcast. It made the acknowledgment in an e-mail sent to all DHS employees, including Plaintiffs. In the e-mail Defendant promised to make "prompt and complete payment as required." DHS Broadcast, Ex. 6; Coleman Depo., at 205:510, Ex. 7. Plaintiffs still in Defendant's employ on May 6, 2003 would have received the e-mail. Coleman Depo., at 205:5-10, Ex. 7.

Response: Disagrees. DHS sent a broadcast email to all DHS employees, including the plaintiffs. Pl. Ex. 6. The email states:

> If guidance is received from OPM directing payment, we will work to identify funds, and undertake prompt and complete payment as required.

68. After Defendant acknowledged its responsibility to pay overtime, Defendant repeatedly promised Plaintiffs, and others, that they would be paid under the FLSA. See e.g. DHS Broadcast, Ex. 6; OPM Q&A website, Ex. 10; Stanley e-mail ("I also brought this [not payment of overtime] to the attention of my payroll people in my old INS district office.

They then sent out an e-mail saying that headquarters had contacted FLETC for the class rosters of all the affected classes and that we would be paid. That was in September 2003. "), Ex. 24; Alexander Quirante e-mail exchange with Alethea Smalls (May 18, 2005)("You told me that my pay should be compensated by the end of February. At the end of February, still nothing. It is now May and I have not received 6th day compensation nor any replies to my ccmails to you. Could you please let me know who I need to talk to have my problem resolved." Smalls responded that "We forwarded your name to the National Finance Center for payment of the 6th day of training last month. We are waiting for a response from them as to when the payments will be made. Once we receive that information, we will contact employees by email to let them know know to expect the payments. Thank you for your patience."), Ex. 25; U.S. Customs and Border Protection e-mail to Legacy INS Employees Who Attended a 6th Day of Basic Training (July 14, 2005)("On August 6, 2003, the Bureau of Immigration and Customs Enforcement received authority from the Department of Homeland Security (DHS) to pay FLSA overtime to non-exempt legacy Immigration and Naturalization Service (INS) employees who attended basic training for a scheduled 6th day...The retroactive payment for the 6th day of training will be direct deposited to your account separately from your normal paycheck during the week of July 18,2005"), Ex. 26.

Response: Disagrees. In 2003, ICE determined to pay Plaintiffs were owed overtime wages for their time spent in training at FLETC. Ex. 1 (2007 Coleman Decl.), ¶¶ 20-21; Ex. 2 (2007 Smalls Decl.), ¶ 4. Prior to this, DHS sent a broadcast email to all DHS employees, including Plaintiffs. Pl. Ex. 6.

The email states:

> If guidance is received from OPM directing payment, we will work to identify funds, and undertake prompt and complete payment as required.

69. Defendant requested that the Plaintiffs be reimbursed for both unpaid overtime at the rate of time and one-half and liquidated damages. Cheryl A Cotton e-mail exchange with Alethea Smalls (April 2, 2004)(Re: 6th day training request for payment)(The request for FLSA and Liquidated Damages that was sent to them on 12/24 has an RA), ("Cotton e-mail") Ex. 27.

Response: Disagrees. ICE requested that Plaintiffs be paid back overtime wages as well as interest. ICE's request is set forth in a memorandum regarding the proposed agreement with the National Finance Center (NFC). Ex. 15 (Memorandum from ICE to NFC, Sep. 10, 2004). Furthermore, the Reimbursable Agreement itself only concerns payment for overtime and interest. Ex. 18 (Reimbursable Agreement Between ICE and NFC, Sep. 10, 2004). The document referenced does not support the allegation as it refers to a February 2004 Reimbursable Agreement, not the agreement at issue. Pl. Ex. 27.

70. Defendant also recognized an obligation to pay liquidated damages for FLSA violations on Plaintiffs' Statement of Earnings and Leave. See e.g. Thomas Porta Statement of Earnings and Leave and Maame AF. Ewusi-Mensah letter to Michael J.D. Sweeney (July 18, 2007)("Regarding the backpay notice provided (Request No. 5), we have not been able to locate these documents in the records of ICE. Please see attached, however, a

copy of the payroll records for Thomas Porta setting forth the provided. This document is Bates-labeled MOR-3685 through MOR-3689), ("Porta Statement of Earnings"), combined as Ex. 28.

Response: Disagrees. Neither DHS, ICE, nor INS has an obligation to pay the Plaintiffs liquidated damages. 29 U.S.C. § 201, et seq. Neither DHS, ICE, nor ICE has recognized any such obligation. Answer to Second Amended Complaint, ¶ 31; Ex. 1 (2007 Coleman Decl.), ¶ 32. The document cited therein does not support the allegation.

71. And although Defendant knew it was required to pay liquidated damages and had promised to do, this pay was excluded. Porta Statement of Earnings, Ex. 28.

Response: Disagrees. Neither DHS, ICE, nor INS has an obligation to pay the Plaintiffs liquidated damages. 29 U.S.C. § 201, et seq. Neither DHS, ICE, nor ICE has recognized any such obligation. Answer to Second Amended Complaint, ¶ 31; Ex. 1 (2007 Coleman Decl.), ¶ 32. The document cited therein does not support the allegation. DHS has paid all the Plaintiffs back overtime wages as well as an interest payment. Ex. 1 (2007 Coleman Decl.), ¶¶ 20-21; Ex. 2 (2007 Smalls Decl.), ¶ 4.

72. Despite its promise of prompt payment, Defendant waited at least an additional 16 months to begin paying FLETC trainees. Defendant made its first payment to FLETC trainees in December 2004. Smalls Decl., at ¶17, Ex. 19.

Response: Disagrees. The document cited does not support any allegation regarding a "promise of prompt payment." ICE began the process of paying the

FLETC trainees in August 2003. Pl. Ex. 19. The first payment was made in December 2004. Pl. Ex. 19.

73. Plaintiff Moreno was not paid until February 2005. Moreno Decl., at ¶6, Ex. 1.

Response: To the extent this proposed finding of fact refers to the overtime wages at issue, we agree. Otherwise, we disagree.

74. Moreover, numerous other FLETC trainees were not paid until June 2005. Smalls Decl., at ¶19; Lasar e-mail ("Any new word on when we will be paid." Smalls response was "I don't know exactly when NFC will be able to do the payments."), Ex. 21; Brown e-mail ("I anticipate that payments will take about a couple of months to process. Your name was verified by FLETC and will now be sent to NFC for payment. I will send an email to everyone once I have a definite date. Thanks for your patience."), Ex. 22; U.S. Customs and Border Protection e-mail to Legacy INS Employees Who Attended a 6th Day of Basic Training (July 14, 2005)("On August 6, 2003, the Bureau of Immigration and Customs Enforcement received authority from the Department of Homeland Security (DHS) to pay FLSA overtime to non-exempt legacy Immigration and Naturalization Service (INS) employees who attended basic training for a scheduled 6th day...The retroactive payment for the 6th day of training will be direct deposited to your account separately from your normal paycheck during the week of July 18, 2005"), Ex. 26.

Response: To the extent this proposed finding of fact refers to the overtime wages at issue, we agree. Otherwise, we disagree. Further, nearly 4,000 of the over 4,000 employees owed back overtime wages were paid back overtime wages plus Back Pay Act interest in December 2004. Ex. 2 (2007 Smalls

Decl.), ¶ 19.

75. Defendant did not pay the liquidated damages portion of its liability, even though it acknowledged that its FLSA violations inherently incurred liability for liquidated damages. Cotton e-mail (The request for FLSA and Liquidated Damages that was sent to them on 12/24 has an RA), Ex. 27; Porta Statement of Earnings, Ex. 28.

Response: Objects and Disagrees. As an initial matter, this proposed finding of fact is a legal conclusion, but it does not preclude summary judgment in favor of the Government. Neither DHS, ICE, INS have any liquidated damages liability, and none of the three agencies has ever "acknowledged" that they do. Answer to Second Amended Complaint, ¶ 31; Ex. 1 (2007 Coleman Decl.), ¶ 32. The documents cited therein do not support the allegation.

76. Instead, Defendant paid only back wages plus a nominal interest payment. Coleman Depo., at 41:6-22, Ex. 7; Smalls Decl., at ¶¶14, 17, Ex. 19.

Response: Disagrees. DHS paid the Plaintiffs back overtime wages as well as an interest payment calculated under the Back Pay Act. Pl. Ex. 19; Ex. 2 (2007 Smalls Decl.) ¶ 22.

77. On Plaintiffs' pay statements, Defendant listed the payment it made as "liq.damages/int.backpay". Porta Statement of Earnings, Ex. 28.

Response: Disagrees. The National Finance Center of the Department of Agriculture generated a Statement of Earnings in connection with ICE's payment to the Plaintiffs. Ex. 3 (Declaration of Kevin Benit, Dec. 18, 2007), ¶ 5; Ex. 2 (2007 Smalls Decl.), ¶ 21. That Statement lists the payment of

interest pursuant to the Back Pay Act in a line item entitled "LIQ.DAMAGES/INT.BACKPAY." Pl. Ex. 28; Ex. 3 (Benit Decl.), ¶ 12.

78. Despite calling the payment liquidated damages, Defendant did not give Plaintiffs notice that it was not paying liquidated damages. Porta Statement of Earnings, Ex. 28.

<u>Response</u>: Disagrees. Neither ICE nor the NFC "called" the payment of back overtime wages and Back Pay Act interest "liquidated damages." Ex. 3 (Benit Decl.), ¶ 12. DHS explained to Plaintiffs that it would pay them back overtime wages as well as interest. Pl. Ex. 26.

79. Defendant provided no other information about what the payment was for, how it was calculated, or whether any taxes or other monies had been withheld. Porta Statement of Earnings, Ex. 28.

<u>Response</u>: Disagrees. DHS explained to Plaintiffs via email that it would pay them back overtime wages and interest. Pl. Ex. 26. Further, the Statement of Earnings enumerates the deductions taken. Ex. 3 (Benit Decl.), ¶ 13.

80. Plaintiffs that had left Defendant's employment received only the check with no accounting at all. Moreno Decl., at ¶6, Ex. 1.

<u>Response</u>: Disagrees. DHS explained to Plaintiffs via email that it would pay them back overtime wages and interest. Pl. Ex. 26 .

81. Plaintiffs brought their claims in this case immediately after receiving Court-ordered notice informing them that Defendant had not made complete payment as required.

<u>Response</u>: Objects to this statement because it includes no citation to any document, affidavit, or declaration supporting it. Moreover, it is inconsistent with

known evidence, namely the notice approved by the Court, which states, in relevant part (emphasis added):

> You will soon receive, or may have recently received, a payment from the Government for overtime wages for Saturday training during your entry-level training. The payment does not fully compensate you for the amount claimed in the Plaintiffs' collective action lawsuit.

82. It is undisputed that Department of Labor approved FLSA poster was not posted at the FLETC. Coleman Depo., 329, Ex. 7.

Response: Agrees that the Department of Labor poster required for private employers was not posted at the FLETC. Ex. 32 (Coleman Depo.), 330:13-25; 29 U.S.C. § 204(f) (stating that OPM, not Department of Labor, administers FLSA with respect to employees of Federal agencies).

83. Moreover, the Defendant did not take any other steps to inform its employees about their FLSA rights. Coleman Depo., at 329, Ex. 7.

Response: Disagrees. DHS published a broadcast email referencing applicable regulations. Pl. Ex. 6. ICE sent an email to the Plaintiffs regarding their FLSA rights. Pl. Ex. 26.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Assistant Director

Of Counsel:
ARTHUR RETTINGER
Senior Counsel
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229
Tel: (202) 344-2978
FAX: (202) 344-2950

MELANIE WATSON
Attorney-Advisor
Office of Personnel Management
1900 E Street, NW
Washington, DC 20415
Tel: (202) 606-1700
Fax: (202) 606-0082

s/ Maame A.F. Ewusi-Mensah
MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

December 21, 2007

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 21st day of December 2007, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Maame A.F. Ewusi-Mensah