# EXHIBIT 35

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ARTURO MORENO, JR., et. al.,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF U.S. CITIZENSHIP AND IMMIGRATION SERVICES, DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendant. | ) | Civil No. 04-0899 (PLF) |

## DECLARATION OF WAYNE COLEMAN

1. I, Wayne Coleman, declare that I am a Senior Compensation Policy Specialist, employed by the United States Bureau of Immigration and Customs Enforcement (hereinafter ICE), United States Department of Homeland Security.

2. **OPM's Early Policy.** Since the civilian federal workforce was covered by the Fair Labor Standards Act on May 1, 1974, it has been the understanding of the various Federal Agencies that federal employees attending training that provided them with the basic skills and knowledge needed to perform their jobs were not entitled to overtime for any hours that exceeded 40 in a work week. This interpretation is based on the guidance issued by the U.S. Office of Personnel Management (OPM) in Federal Personnel Management (FPM) manual Letter #551-17, dated January 28 1981 (Attached as Exhibit 1). To the best of my knowledge this interpretation was given because the basic training did not meet the requirements outlined in 5 CFR § 551.423(a)(2). It also was consistent with long standing federal policy related to training, codified at 5 CFR § 410.402, which generally prohibits the payment of premium pay to those attending training paid for from appropriated funds.

3. **FLETC Decision to Train 6 Days Each Week.** The decision for trainees to attend a regularly scheduled 6th day during basic training at the Federal Law Enforcement Training Center (FLETC) at Glynco, Georgia was made by FLETC shortly after the

PLAINTIFF'S EXHIBIT 2

GOVERNMENT EXHIBIT A

tragic events of September 11, 2001, in order to move trainee law enforcement employees through basic training more quickly and to enable FLETC to train more law enforcement employees in a shorter period of time. All of the federal agencies with employees in law enforcement related occupations that utilize FLETC for basic training were affected by this decision to go to a six-day training week. Based upon OPM's original guidance, employees who did not meet one of the enumerated exemptions (as set out in 5 C.F.R. §551.423) were not paid for this additional eight hours of training. Employees in entry-level training, such as Plaintiff, did not meet any of the enumerated exemptions.

4. **OPM's Recent Policy Reinterpretation.** In the middle of 2003, OPM provided a new interpretation of an employee's entitlement to FLSA overtime during basic training, specifically with regard to those nonexempt employees attending a regularly scheduled 6th day in a basic training week. Their interpretation was provided on their website in a question and answer format, which is undated, but was issued during the month of June 2003, to the best of my recollection (http://www.opm.gov/oca/pay/HTML/TrainQA.asp) (Exhibit 2). As I understand OPM's new position, the employees are now entitled to overtime pay for certain hours spent in basic training because of the guidance provided at 5 CFR § 551.421, which states that all regularly scheduled hours of duty are hours of work for FLSA purposes and, therefore, compensable. When such regularly scheduled hours, (e.g., a regularly scheduled 6th day of training), exceed the basic 40-hour workweek, nonexempt employees would be entitled to FLSA overtime pay during training under this new interpretation.

5. I conducted a review of the compensation policy memoranda (CPM) issued during 2003 and 2004, which were available on the OPM website. I did not find any such CPM being issued notifying agencies of this change. (see http://www.opm.gov/oca/compmemo/index.asp). The CPM is the standard method for notifying federal agencies of an official change in OPM policy.

6. **DHS Authority to Pay Overtime.** On August 6, 2003, ICE received authority from the Department of Homeland Security to pay FLSA overtime to legacy Immigration and Naturalization Service (INS) employees who were assigned and attended basic training on a regularly scheduled 6th day during a basic training week after January 1, 2002.

Beginning with pay period 17-03 (that ran from August 24 through September 6, 2003) nonexempt ICE employees attending basic training were to be paid FLSA overtime in accordance with the new interpretation discussed in the preceding paragraph. Field timekeepers were authorized to begin coding the hours actually spent in training on a regularly scheduled 6th training day during a basic training week on August 24, 2003.

7. **ICE Efforts to Pay Overtime Owed.** Beginning on August 24, 2003, ICE compensation policy staff began to collect the names of those employees and former employees who attended training between January 1, 2002 and August 23, 2003, and to identify the number of days the employees attended sessions on a regularly scheduled 6th day of training. In addition, the compensation policy staff began working with the U.S. Department of Justice, Justice Management Division to establish a reimbursable agreement (RA) with the payroll provider [U.S. Department of Agriculture, National Finance Center (NFC), New Orleans, LA]. The compensation policy staff also reached out to the ICE Office of Budget and the ICE Office of Finance to ascertain that funds were available to make the payments for back overtime and to identify the budget account codes that NFC will charge the payments against. A decision was made early in 2004 to pay the affected employees both the amount owed for the overtime hours spent in training, and applicable interest at the standard federal rates. Interest will be paid from the date the employee worked the additional hours until the payment is made. During the week of September 13, 2004 all of these efforts were completed with the establishment of the RA with NFC. This will enable ICE to make the payments to the approximately 3,900 affected employees during pay period 7 or pay period 9 (i.e., late April or early May) of calendar year 2005. The delay in payment is caused by the end of year workload faced by the National Finance Center (e.g., production of W2 forms) and the large number of back payments NFC has been asked to make.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on 14 October 2004.**

Wayne Coleman
Senior Compensation Policy Specialist
Bureau of Immigration and Customs Enforcement
Department of Homeland Security