No. 05-142C
(Judge Firestone)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ARTURO MORENO, et al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

APPENDIX TO
DEFENDANT'S REPLY IN SUPPORT OF ITS
CROSS-MOTION FOR SUMMARY JUDGMENT

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

MARTIN F. HOCKEY, JR.
Assistant Director

MAAME A.F. EWUSI-MENSAH
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel: (202) 353-0503
Fax: (202) 514-8624

Of Counsel:
ARTHUR RETTINGER
Senior Counsel
Office of Chief Counsel
U.S. Customs and Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229
Tel: (202) 344-2978
FAX: (202) 344-2950

MELANIE WATSON
Attorney-Advisor
Office of Personnel Management
1900 E Street, NW
Washington, DC 20415
Tel: (202) 606-1700
Fax: (202) 606-0082

February 8, 2008

Attorneys for Defendant

## INDEX TO APPENDIX

**Exhibit 37**
Fair Labor Standards Act Poster (approved by the Wage and Hour Division of the Department of Labor), available at http://www.dol.gov/esa/regs/compliance/posters/flsa.htm . . . . . . . . . . . . 399

**Exhibit 38**
Janice R. Christian, OPM Decision No. 0201-07-01 (Dec. 29, 2006) . . . . . . . . . . . . . . . . . . . . 400

**Exhibit 39**
Craig Galluzzo, OPM Decision No. F-1802-11-01 (Dec. 19, 2007) . . . . . . . . . . . . . . . . . . . . . 404

# EMPLOYEE RIGHTS

## UNDER THE FAIR LABOR STANDARDS ACT

THE UNITED STATES DEPARTMENT OF LABOR WAGE AND HOUR DIVISION

## FEDERAL MINIMUM WAGE

**$5.85** PER HOUR
BEGINNING JULY 24, 2007

**$6.55** PER HOUR
BEGINNING JULY 24, 2008

**$7.25** PER HOUR
BEGINNING JULY 24, 2009

**OVERTIME PAY**

At least $1\frac{1}{2}$ times your regular rate of pay for all hours worked over 40 in a workweek.

**YOUTH EMPLOYMENT**

An employee must be at least **16** years old to work in most non-farm jobs and at least **18** to work in non-farm jobs declared hazardous by the Secretary of Labor.

Youths **14** and **15** years old may work outside school hours in various non-manufacturing, non-mining, non-hazardous jobs under the following conditions:

***No more than***
- **3** hours on a school day or **18** hours in a school week;
- **8** hours on a non-school day or **40** hours in a non-school week.

Also, work may not begin before **7 a.m.** or end after **7 p.m.**, except from June 1 through Labor Day, when evening hours are extended to **9 p.m.** Different rules apply in agricultural employment. For more information, visit the YouthRules! Web site at **www.youthrules.dol.gov**.

**TIP CREDIT**

Employers of “tipped employees” must pay a cash wage of at least $2.13 per hour if they claim a tip credit against their minimum wage obligation. If an employee's tips combined with the employer's cash wage of at least $2.13 per hour do not equal the minimum hourly wage, the employer must make up the difference. Certain other conditions must also be met.

**ENFORCEMENT**

The Department of Labor may recover back wages either administratively or through court action, for the employees that have been underpaid in violation of the law. Violations may result in civil or criminal action.

Civil money penalties of up to $11,000 per violation may be assessed against employers who violate the youth employment provisions of the law and up to $1,100 per violation against employers who willfully or repeatedly violate the minimum wage or overtime pay provisions. This law prohibits discriminating against or discharging workers who file a complaint or participate in any proceedings under the Act.

**ADDITIONAL INFORMATION**

- Certain occupations and establishments are exempt from the minimum wage and/or overtime pay provisions.
- Special provisions apply to workers in American Samoa and the Commonwealth of the Northern Mariana Islands.
- Some state laws provide greater employee protections; employers must comply with both.
- The law requires employers to display this poster where employees can readily see it.
- Employees under 20 years of age may be paid $4.25 per hour during their first 90 consecutive calendar days of employment with an employer.
- Certain full-time students, student learners, apprentices, and workers with disabilities may be paid less than the minimum wage under special certificates issued by the Department of Labor.

For additional information:

**1-866-4-USWAGE**

(1-866-487-9243) TTY: 1-877-889-5627

**WWW.WAGEHOUR.DOL.GOV**

U.S. Wage and Hour Division

U.S. Department of Labor | Employment Standards Administration | Wage and Hour Division

WHD Publication 1088 (Revised June 2007)

A399

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Human Capital Leadership
and Merit System
Accountability Division

# Fair Labor Standards Act Decision
# Under section 4(f) of title 29, United States Code

| | |
|---|---|
| **Claimant:** | Janice R. Christian |
| **Agency classification:** | Human Resources Specialist<br>GS-201-7 |
| **Organization:** | Blackfeet Service Unit<br>Billings Area Office<br>Indian health Service<br>Public Health Service<br>Department of Health and Human Services<br>Browning, MT |
| **Claim:** | Reopening and Reconsideration Request for Punitive Damages under the FLSA |
| **OPM decision:** | Denied |
| **OPM decision number:** | F-0201-07-01 (formerly 04-F0007) |

Kevin E. Mahoney
Deputy Associate Director
Center for Merit System Accountability

12-29-06
Date

This decision is issued pursuit a request for discretionary review under conditions and time limits specified in 5 CFR 551.708. The claimant has the right to bring action in the appropriate Federal court if dissatisfied with the decision.

**Decision sent to:**

Ms. Janice R. Christian
P.O. Box 2617
Browning, MT 59417

Ross W. Cannon, Esq.
Cannon & Sheehy
2031 Eleventh Avenue
P.O. Box 5717
Helena, MT 59604

Mr. Donald W. MacDonald
Human Resources Officer
Billings Area Indian Health Service
2900 4th Avenue North
P.O. Box 36600
Billings, MT 59107

Deputy Assistant Secretary for Human Resources
Department of Health and Human Services
HHH Building
200 Independence Avenue, SW
Room 536E
Washington, DC 20201

OPM Decision Number F-0201-07-01

**Introduction**

On November 18, 2003, the Center for Merit System Compliance received a Fair Labor Standards Act (FLSA) claim from Janice R. Christian. During the claim period, she occupied a Human Resources Specialist, GS-201-7, position with a duty station of Browning, Montana. She believes that she was entitled to compensation for time spent in travel status. We accepted and decided her claim under section 4(f) of the FLSA as amended and the Office of Personnel Management's (OPM) implementing regulations under subpart G, part 551, of title 5, Code of Federal Regulations (CFR).

Our May 18, 2005, decision found the claimant was entitled to compensation under the FLSA for time spent driving as discussed in the body of the decision. We directed the agency to compute the FLSA overtime pay due the claimant for all time spent driving, plus interest, and stated if she chooses to accept back pay, the claimant must sign a waiver of suit when she receives payment.

**Background**

On October 3, 2006, we received a request to reopen and reconsider the claim decision from Ross W. Cannon, Esq., whom the claimant designated in writing on September 21, 2006, as her official representative. The September 25, 2006, request states that pursuant to our decision, the claimant:

> Received $4,862.18 in overtime compensation but which failed to consider her request for punitive damages as provided for in 29 U.S.C. § 260(b)….I originally mailed this petition …on March 20, 2006. I sent a follow-up inquiry…on July 21, 2006….You responded to that inquiry by your letter dated August 25, 2006, with which you returned the petition because it did not include authorization from Ms. Christian to represent her in this matter.

Based on receipt of the written designation as required under 5 CFR § 551.704, we are responding to this request.

**Evaluation**

The request for reopening and reconsideration is based on the representative's assertion our decision failed to consider the claimant's request for punitive damages and that absent a showing of good faith on the part of the claimant's employer, the claimant is entitled to liquidated damages in an amount equal to the amount we awarded as compensation for FLSA overtime for time spent traveling. He opines the employing agency did not serve the claimant with its intent to assert a "good faith" defense. In support of his rationale, he quotes the following from:

> Bull v. U.S., 68 Fed. Cl. 212, 10 Wage & Hour Cas.2d (BNA 1687 (Fed. Cl. Sep 27, 2005)
>
> > An employer who has violated the FLSA "shall be liable" to employees affected for unpaid Overtime compensation…and an additional equal

> amount in liquidated damages." 29 U.S.C. § 260(b). The court, in its sound discretion, may mitigate or deny liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]. 29 U.S.C. § 260; see also Beebe, 640 F. 2d at 1295 (1981). [FN69] "The burden rests on the government to establish its good faith and the reasonable grounds for its decision." Adams, 350 F.3d at 1226 (citing § 260) (footnote omitted); accord Laffey, 567 F.2d at 464-65 (describing this burden as "substantial"); Bankston, 60 F.3d at 1254 ("It is easier for a plaintiff to receive liquidated damages under the FLSA than it is to extend the statute of limitations for FLSA claims....").

We addressed this issue in our August 25, 2006, response to the claimant's representative, advising him of the requirement he designated as the claimant's representative in writing:

> It appears Ms. Christian is seeking liquidated damages as provided for in the FLSA. Under 29 U.S.C. § 216, Federal courts have substantial discretion in fashioning remedies for violations of the FLSA, including liquidated damages. Unlike the courts, OPM's administrative claims process derives its remedial authority from the Back Pay Act, codified as 5 U.S.C. § 5596. Under the Back Pay Act, a claimant can receive back pay and interest for FLSA overtime performed within the claim period. See also, 5 CFR part 550, subpart H). There is no provision in the Back Pay Act for liquidated damages.

As noted in the representative's own citation "The *court*, in its discretion, may mitigate or deny liquidated damages." (Emphasis added.) OPM's regulations, which have the force of law, state in pertinent part (5 CFR. § 551.703(c)): "Nothing in this subpart limits the right of a claimant to bring an action in an appropriate United States Court. Filing a claim with an agency or OPM does not satisfy the statute of limitations governing FLSA claims filed in court. The authority of the court to grant liquidated damages in 29 U.S.C. §§ 260 and 216 does not extend to administrative claim decisions issued by OPM. Our regulations do not require an agency to "serve the claimant with its intent to assert a 'good faith' defense." Therefore, we will not address this issue further.

The regulations governing the filing of an administrative claim (5 CFR. § 551.702(c)) also state in pertinent part: "If a claim for *back pay* (emphasis added) is established, the claimant will be entitled to pay for a period of up to 2 years (3 years for a willful violation ) *back from the date the claim was received.*" Therefore, we conclude the claimant's rationale with regard to liquidated damages is misplaced in that the FLSA claims administrative process does not provide for the awarding of liquidated damages.

**Decision**

The claimant's request to reopen and reconsider her claim is denied for the foregoing reasons.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT
Washington, DC 20415

Human Capital Leadership
and Merit System
Accountability Division

# Fair Labor Standards Act Decision
# Under section 4(f) of title 29, United States Code

**Claimant:** Craig Galluzzo

**Positions:** Supervisory Detention Enforcement Officer, GS-1802-11
Supervisory Immigration Enforcement Agent, GS-1801-11/12

**Organization:** Boston District Office
U.S. Immigration and Customs Enforcement
Department of Homeland Security
Boston, Massachusetts

**Claim:** Nonexempt status

**OPM decision:** Nonexempt. FLSA payment due for overtime worked.

**OPM decision number:** F-1802-11-01

Jeffrey E. Sumberg
Deputy Associate Director
Center for Merit System Accountability

12/19/07
Date

As provided in section 551.708 of title 5, Code of Federal Regulations (CFR), this is binding on all administrative, certifying, payroll, disbursing, and accounting officials of agencies for which the U.S. Office of Personnel Management (OPM) administers the Fair Labor Standards Act (FLSA). The agency should identify all similarly situated current and, to the extent possible, former employees, and ensure that they are treated in a manner consistent with this decision. There is no right of further administrative appeal. This decision is subject to discretionary review only under conditions and time limits specified in 5 CFR 551.708 (address provided in section 551.710). The claimant has the right to bring action in the appropriate Federal court if dissatisfied with the decision.

The agency is to compute the claimant's overtime pay in accordance with instructions in this decision and then pay the claimant the amount owed him. If the claimant believes the agency has incorrectly computed the amount owed him, he may file a new FLSA claim with this office.

**Decision sent to:**

Mr. Craig Galluzzo
231 Edgewater Drive
Brunswick, GA 31525

Ms. Ronelle Rotterman
Director, Compensation Programs and Policy Division
U.S. Customs and Border Protection
Department of Homeland Security
1300 Pennsylvania Avenue, NW
Washington, DC 20229

Human Resources Director
Office of Human Capital
Bureau of Immigration and Customs Enforcement
Department of Homeland Security
425 I Street, NW
Washington, DC 20536

The Honorable Judd Gregg
United States Senator
16 Pease Boulevard
Portsmouth, NH 03801

**Introduction**

On July 1, 2005, OPM received an FLSA claim from Craig Galluzzo. He is claiming FLSA overtime pay he believes is due to him dating back to 1995. The claimant currently occupies a position as Deportation Officer (Course Development/Instructor), GS-1801-13, with the Federal Law Enforcement Training Center (FLETC) facility in Glynco, Georgia. This facility is part of the Department of Homeland Security. We have accepted and decided this claim (originally docketed as #05-F0015) under section 4(f) of the FLSA as amended.

In reaching our FLSA decision, we have carefully considered all information furnished by the claimant and his agency, including the agency's initial administrative report which we received on March 27, 2007, and further information received on September 13, 2007. To help decide this claim, we conducted a telephone interview with the claimant on October 1, 2007. We also conducted a telephone interview with the second-level supervisor during the claim period on October 17, 2007.

**Background and General Issues**

The claimant entered on duty in August 1991 as a Detention Enforcement Officer (DEO), GS-1802-7, with the Boston District Office of the Immigration and Naturalization Service of the Department of Justice. He subsequently received a series of promotions to Supervisory DEO positions: GS-1802-8 on August 20, 1995; GS-1802-9 on August 18, 1996; a temporary promotion to GS-1802-10 on June 8, 1997; and promotion to GS-1802-11 on October 10, 1999. His position was assigned to the Department of Homeland Security, U.S. Immigration and Customs Enforcement, on March 8, 2003. The claimant was reassigned to a Supervisory Immigration Enforcement Agent (Limited Duty), GS-1801-11, position on August 10, 2003, and promoted to a full-performance level Supervisory Immigration Enforcement Agent, GS-1801-12, on November 16, 2003. The claimant was reassigned to a Deportation Officer, GS-1801-12, position on August 22, 2004. The Deportation Officer position was determined by the agency to be nonexempt from the FLSA. The claimant occupied that position until December 10, 2006, when he received a temporary promotion for an initial three-year period to his current position as an instructor at FLETC.

The claimant states that a claim "has been resolved through the court system" which addresses the same Supervisory DEO positions that he held since 1995. He believes that decision should apply to all employees:

> **A Federal Judge awarded other Supervisors, double damages with interest, for the exact claim I am making to you.** It appears this should be an open and shut case. I only want what is due me, and what **a Federal judge has already decided is owed me. I should not have to retain an attorney and fight this through the Courts, when it has already been decided**. I only wish that I be paid FLSA pay for the time I was not and because a Federal Judge has doubled that decision I wish this also. I am willing to forfeit the interest.

The case the claimant cites is that of Aaron Angelo, Jr., filed in the U.S. Court of Federal Claims (No. 00-116C) on March 6, 2000. The plaintiffs included approximately 90 Supervisory Detention Enforcement Officers (SDEO), GS-1802-9, and Detention Operations Supervisors (DOS), GS-1802-11. The claimant was not one of the plaintiffs.

The claimant's synopsis of the *Angelo* case outcome is not accurate. The parties reached a settlement agreement which was signed by the Department of Justice Attorney on February 23, 2004. Briefly, the agreement indicated the defendant previously conceded liability with respect to overtime compensation for the SDEOs and the Court awarded the SDEOs liquidated damages by order of June 27, 2003. The Court further held that the defendant's actions were not willful, and a two-year statute of limitations would apply to all plaintiffs. By agreement, the DOSs were to be paid eighty percent of the difference between what each received in overtime compensation under title 5 U.S.C. 5545(c)(2) and what they would have received under the FLSA. The DOSs waived any claim for liquidated damages, attorney's fees, or costs. The recovery period was to begin two years prior to the date each plaintiff's claim was filed with the courts and would run until August 10, 2003, at which time the plaintiffs were promoted to Supervisory Immigration Enforcement Agents (SIEA). It further stated the DHS has or will provide additional training to the plaintiffs and has changed or will change the duties, pay grade, and title for both SDEOs and DOSs. The DOSs have been or will be promoted upon completion of training to the GS-12 pay grade. The Court did not address the question of FLSA status of the SIEA positions, which the agency has determined to be exempt, has not paid SIEAs FLSA overtime compensation, and does not intend to pay such overtime in the future.

A second case was filed with the same Court, Qasem M. Al-Ali, on behalf of the SIEAs, claiming overtime compensation, liquidated damages, and attorney fees and costs based on their belief the position should be exempt from the provisions of the FLSA. This case was initially filed November 21, 2005, and amended on January 13, 2006, to add additional plaintiffs. The claimant was a party to the initial filing of this case. The case arose out of the plaintiffs' claims that while employed as SIEAs at various locations within Immigration and Customs Enforcement, the agency failed to pay overtime compensation to which they believe they are entitled pursuant to the FLSA.

The parties entered into negotiations and reached a settlement agreement, signed by the Department of Justice Attorney on November 7, 2006. This settlement was for the purpose of disposing of the plaintiffs' claims without there being any trial on the merits or further adjudication of any issue of fact or law, and without constituting an admission of liability on the part of either party, and for no other purpose. The plaintiffs settled the case in exchange for payment of back pay for two years prior to the filing of their complaint until such time as their agency converts their FLSA status to nonexempt, and $45,000 in attorney's fees. The plaintiffs waived liquidated damages and interest and each party were to otherwise bear their own costs and expenses.

**Analysis**

*Period of the Claim*

5 CFR 551.702 provides that all FLSA pay claims filed after June 30, 1994, are subject to a two-year statute of limitations (three years for willful violations). A claimant must submit a written claim to either the employing agency or to OPM in order to preserve the claim period. The date the agency or OPM receives the claim is the date that determines the period of possible back pay entitlement. The claimant's request was received by OPM on July 1, 2005, and this date is appropriate for preserving the claim period.

The claimant's reliance on *Angelo* as covering his claim ("a **Federal Judge has already decided is owed me**") is both misplaced and contrary to statute. As Section 216(b) of title 29, United States Code (U.S.C.), the FLSA, as codified, makes clear an aggrieved employee must be party to a suit for damages under the FLSA in order to be covered by the court's judgment:

> An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

Since he was not a party to *Angelo*, the claim period established by the participants of that case for purposes of judicial review may not apply to the claimant. Furthermore, tolling the statute for judicial review is separate and distinct from preserving the claim for administrative review by either the agency employing the claimant during the claim period or OPM.

The question of the FLSA status of the SIEA position was not addressed in the *Angelo* court decision or the settlement agreement. The plaintiffs were made aware the agency "has classified the SIEA positions as FLSA exempt, has not paid SIEAs FLSA overtime compensation, and does not intend to pay them FLSA overtime in the future." The FLSA status of the SIEA positions was the issue in the *Al-Ali* case. As indicated above, this case was settled without trial on the merits and without constituting any admission of liability on the part of either side. The plaintiffs agreed to settle for back pay for two years prior to the filing the complaint in the Court of Federal Claims until such time as the agency converted their status to FLSA nonexempt. As one of the initial plaintiffs in the *Al-Ali* case, the claimant is entitled, under the settlement agreement, to a period of back pay from November 21, 2003, until his reassignment on August 22, 2004, to the position of Deportation Officer, GS-1801-12, determined by the agency to be a nonexempt position. OPM defers to the decision of the court in this settlement agreement.

The time period of the OPM claim begins July 1, 2003, and continues to the beginning of the claim period established by the *Al-Ali* agreement; i.e., November 21, 2003. During that time period, the claimant held three positions:

1. July 1 to August 9, 2003 -- Supervisory Detention Enforcement Officer (Detention Operations Supervisor), GS-1802-11

2. August 10 to November 15, 2003 -- Supervisory Immigration Enforcement Agent (Limited Duty), GS-1801-11

3. November 16 to November 20, 2003 -- Supervisory Immigration Enforcement Agent, GS-1801-12

*Position information*

The claimant was assigned to what is now known as the U.S. Immigration and Customs Enforcement, Office of Detention and Removal Operations Field Office in Boston, Massachusetts. The facility had previously operated as a 50-bed detention facility which closed in January 1998. The site continued to operate as a staging facility where persons may be detained for a period during the day while waiting for transportation between facilities, to court hearings, or for removal from the United States. The facility operates with four staggered shifts to provide coverage from 6:00 a.m. to 12 midnight.

While occupying the first position as a DOS, the claimant served as second-level supervisor over a staff of 30 to 35 Detention Officers, GS-7, and four Supervisory Detention Officers, GS-9. He was responsible for supervision, security, and operations in the alien detention and removal for the facility, reporting to a Supervisory Detention and Deportation Officer (SDDO). As a result of an agency decision to restructure their workforce which included combining some additional skills from the enforcement agent occupation, the claimant was reassigned to the second position, SIEA (Limited Duty). Additional training was acquired from FLETC on updated laws and additional authorities for fugitive operations. The record indicates these positions became more involved in a variety of enforcement functions including identification, investigation, apprehension, prosecution, as well as detention and deportation of aliens and criminal aliens, and apprehension of absconders from removal proceedings. When training was satisfactorily completed, promotions were made to the GS-12 full-performance level.

**Evaluation of FLSA Coverage**

Sections 551.201 and 551.202 of 5 CFR require that an employing agency may designate an employee FLSA exempt only when the agency correctly determines that the employee meets one or more of the exemption criteria. In all exemption determinations, the agency must observe the following principles. Each employee is presumed to be FLSA nonexempt. Exemption criteria must be narrowly construed to apply only to those employees who are clearly within the terms and spirit of the exemption. The burden of proof rests with the agency that asserts the exemption. If there is a reasonable doubt as to whether an employee meets the criteria for exemption, the employee should be designated FLSA nonexempt. The designation of a position's FLSA status ultimately rests on the duties actually performed by the employee. There are three exemption categories applied to Federal employees: executive, administrative, and professional. Neither the claimant nor the agency assert the claimant's work is covered by the

professional or administrative exemptions; and, based on careful review of the record, we concur. Therefore, our analysis is limited to the executive exemption.

Executive Exemption Criteria

Under the executive exemption criteria contained in 5 CFR 551.205, an executive employee is a supervisor or manager who manages a Federal agency or any subdivision thereof (including the lowest recognized organizational unit with a continuing function) and customarily and regularly directs the work of subordinate employees and meets both of the following criteria: (a) the primary duty test and (b) the 80 percent test.

(a) The primary duty test is met if the employee:

> (1) has authority to make personnel changes that include, but are not limited to, selecting, removing, advancing in pay, or promoting subordinate employees, or has authority to suggest or recommend such actions with particular consideration given to these suggestions and recommendations; and
>
> (2) customarily and regularly exercises discretion and independent judgment in such activities as work planning and organization; work assignment, direction, review, and evaluations; and other aspects of management of subordinates, including personnel administration.

The primary duty test is not met.

According to the record provided, the supervisory duties of the GS-11 DOS position describe planning alien removal operations and assigning work schedules; setting work priorities; reviewing and accepting or amending work; making decisions on work problems; developing procedures, work methods, and standards; preparing performance evaluations; approving routine leave; and overseeing training, e.g., assuring new DEOs receive commercial drivers licenses for driving agency buses and vans. There is no mention of authority to make or recommend changes in personnel including, but not limited to selecting, removing, or promoting (properly read conjunctively), as required in the first aspect of the primary duty test.

The SIEA duties as described, in addition to the planning, scheduling, performance evaluation, etc., include discussion of interviewing candidates for vacancies and recommending appointment; recommending rewards for performance accomplishments, promotions, and within-grade increases; hearing and resolving complaints; referring group grievances and more serious complaints to higher levels; and taking or recommending disciplinary action.

Interviews with the claimant and his former second-level supervisor indicate that general work assignment and scheduling was done by the SDDO. As SIEA, the claimant indicated he had no input into hiring, firing, promotion, etc. That responsibility was carried out at higher levels with the Assistant or District Director having final authority. In dealing with a problem employee, he could make a recommendation to higher level supervisors. He did performance appraisals and served as reviewing official for nonsupervisory DEOs. The former supervisor indicated the

claimant could recommend disciplinary action, make decisions on leave, and recommend training with the concurrence of higher level management. He indicated the claimant may participate in interview panels for applicants. These panels consisted of from three to five people, primarily other supervisors and possibly a personnel staff member. The District Director retained hiring authority. The supervisor indicated that while the series changed, the duties did not really change. The agents had more authority for higher level enforcement work with regard to the criminal alien program. The lower level work of escorting prisoners within the U.S. was outsourced to local law enforcement agencies or contract workers in some areas.

The agency report presented no substantive argument for the exemption status and, in fact, deferred to the agreement in the *Angelo* case, indicating that the claimant will receive compensation for the period of August 2003 through November 2003 for the period where he held the positions of DOS and SIEA GS-11/12, as well as the compensation due under the *Al-Ali* settlement. The issues raised by the court regarding the primary duty test in the *Angelo* case; i.e., did the employee have authority to make personnel changes, and did the employee customarily and regularly exercise discretion and independent judgment in certain work-related activities, were not resolved by trial. The court found no willful violation occurred and required the Government to show a demonstration of authority regarding hiring or firing, but this process was overcome by the settlement agreement.

Based on careful review of the complete record, we are unable to clearly establish that the human resources management authorities delegated to the claimant were sufficient to fully meet the primary duty test of the executive exemption. The time period of the OPM claim is short, and the DEO position occupied at the beginning of the claim period was conceded by the agency to be nonexempt. Given the transition and training required for the new SIEA position and the little more than three-month period he occupied the position, it is unlikely to have provided an opportunity for the claimant to participate in exercising a higher level of supervisory responsibility in human resources management with regard to selection, removal, and promotion. The same is true for exercising the discretion and independent judgment on matters of significance as defined in 5 CFR 551.104 in work planning and assignment as well as other aspects of management of subordinates including personnel administration.

(b) The 80 percent test makes special provisions for employees in positions properly classified as GS-5 or GS-6; firefighting or law enforcement employees in positions properly classified at GS-7, GS-8, or GS-9 who are subject to section 207(k) of title 29 U.S.C.; and supervisors in Federal Wage System positions classified below situation 3 of Factor 1 of the FWS Job Grading Standard for Supervisors. These employees must spend 80 percent or more of the work time in a representative workweek on supervisory and closely related work.

The 80 percent test is not appropriate for the claimant's position.

**Decision on FLSA Coverage**

Based on the above analysis, and the principles provided in 5 CFR 551.202, the claimant's work did not clearly meet the criteria for executive, administrative, or professional exemption during

the period of the claim and is, therefore, properly covered by the overtime pay provisions of the FLSA.

Therefore, the claimant is entitled to compensation for all overtime hours worked at the FLSA overtime rate. The claim was received by OPM on July 1, 2005, and the claimant can receive back pay only for two years prior to that date, July 1, 2003. The claim period continues until the date period established by the Al-Ali settlement agreement, November 21, 2003.

The make whole remedy sought by the claimant; i.e., liquidated damages, is not within OPM's authority to award. Under 29 U.S.C. § 216, Federal courts have substantial discretion in fashioning remedies for violations of the FLSA, including liquidated damages. Unlike the courts, OPM's administrative claims process derives its remedial authority from the Back Pay Act, codified as 5 U.S.C. § 5596. Under the Back Pay Act, a claimant can receive back pay and interest for FLSA overtime performed within the claim period. (See also, 5 CFR part 550, subpart H). There is no provision in the Back Pay Act for liquidated damages. The regulations governing the filing of an administrative claim (5 CFR § 551.702(c)) also state in pertinent part: "If a claim for *back pay* (emphasis added) is established, the claimant will be entitled to pay for a period of up to 2 years (3 years for a willful violation) *back from the date the claim was received.*" Therefore, we conclude the claimant's rationale with regard to liquidated damages is misplaced in that the FLSA claims administrative process does not provide for the awarding of liquidated damages.

*Willful Violation*

We defer to adopt the court's determination that the agency's actions with regard to the claimant's similarly situated coworkers did not constitute a willful violation also extends to the claimant's situation for the same reasons expressed by the court. Therefore, the appropriate time period for the claim to OPM would begin July 1, 2003.

The agency should pay the back pay for the difference between the FLSA overtime rate and any title 5 overtime paid. If the claimant believes the agency has computed the amount incorrectly, he may file a new FLSA claim with this office.